PITTMAN BROS. v. RAYSOR.

1. FINDING OF FACT by the Circuit Judge, that the mortgage in question was given by wife to secure husband's debt, affirmed.
2. ASSIGNMENT—WORDS AND PHRASES.—The words, "advances made," in the assignment herein construed to mean past advances.
3. ASSIGNEE—MORTGAGES.—When an assignee takes a mortgage in consideration of past indebtedness, he takes it subject to all the equities existing between the original parties. Following *Gibson* v. *Hutchins*, 43 S. C., 288, and *British American Mortgage ·Co.* v. *Smith*, 45 S. C., 83.
4. MORTGAGES—ESTOPPEL—MARRIED WOMEN.—When a party is not induced to part with something of value by the declaration of a married woman in a mortgage, that the same is executed for the benefit of her separate estate, she is not afterwards estopped from denying such declaration.

Before EARLE, J., Barnwell, November, 1896.  Affirmed.

Action in foreclosure by Pittman Bros. against S. J. Raysor.  Judgment for defendant.  Plaintiff appeals.

*Mr. J. N. Nathans*, for appellant, cites: *Married woman estopped by her declarations:* 45 S. C., 651; 42 S. C., 323; 38 S. C., 437; 33 S. C., 233; 31 S. C., 441; 26 S. C., 288; 34 S. C., 246.

*Messrs. Patterson* and *Holman*, contra, cite: *Whoever invokes estoppel must show that he has been induced to change or alter his position:* 36 S. C., 211; 42 S. C., 326; 31 S. C., 426; 35 S. C., 461.  *Assignees have no higher equities than assignors:* 38 S. C., 148; 45 S. C., 83.

June 30, 1897.  The opinion of the Court was delivered by

MR. JUSTICE GARY. The plaintiffs commenced this action on the 26th of January, 1895, to foreclose a mortgage of real estate. The complaint alleges that G. W. Egan and A. J. Pittman were copartners, doing business in Charleston, under the firm name of Pittman Bros., at the times mentioned in the complaint; that on the 1st of January, 1894, the defendant, S. J. Raysor, executed her bond to M. A. Moye, H. J. Moody, and A. B. Hooten, copartners as Moye, Moody & Co., conditioned for the payment of $1,500 one year from the date thereof, with interest at the rate of eight per cent. per annum, and to secure its payment executed a mortgage on a tract of land in Barnwell County; that said mortgage was duly recorded; that thereafter A. B. Hooten assigned his interest in said mortgage to M. A. Moye and H. J. Moody, and that M. A. Moye and H. J. Moody, copartners as Moye, Moody & Co., assigned said bond and mortgage to Pittman Bros.; that the sum of $1,263.40, with interest from the 1st of January, 1894, is due thereon, and prays for a foreclosure of the mortgage.

The defendant, in her answer, sets up the defense that she was a married woman at the time of the execution of said mortgage, and that it was given to secure the payment of her husband's indebtedness.

After hearing the case, upon testimony taken before the master, his Honor, Judge Earle, filed the following decree: "This is an action on the part of the plaintiffs to foreclose a mortgage on real estate in said county. The defendant, S. J. Raysor, sets up that she was a married woman, and the said mortgage and bond was given to secure the purchase, by her husband, of a one-third interest, bought in the mercantile firm composed of M. A. Moye, H. J. Moody, and A. B. Hooten, and that the said mortgage was given to secure such purchase. It also appeared in that mortgage that the defendant declared that said mortgage was given for the benefit of her separate estate.

"The said mortgage was originally made to the firm of Moye, Moody & Co., composed of M. A. Moye, H. J. Moody,

and A. B. Hooten, and the said A. B. Hooten transferred his interest in the said bond and mortgage to the said M. A. Moye and H. J. Moody. And it also appears that thereafter the said H. J. Moody and M. A. Moye transferred and assigned the said bond and mortgage, in consideration of past advances, to the said Pittman Bros., as appeared on the face of the assignment, that same was in consideration of past advances.

"I am satisfied that the position of Mrs. Raysor was that of a surety in the execution of the said mortgage. The plaintiffs claim, however, that the defendant is estopped from the declaration contained in her mortgage from setting up such defenses. I am satisfied, also, that this contention on the part of the plaintiffs would be correct, if they were in a position to take advantage of such estoppel, but their position was not changed or altered by reason of such statement, made in the mortgage, by the defendant. The mortgage was transferred to secure past indebtedness, and the plaintiffs, therefore, parted with nothing of present value in consideration of said assignment. The action of foreclosure cannot be sustained, and it is ordered and adjudged, that the complaint be dismissed with costs."

The plaintiffs appealed upon the following exceptions: "1. Because his Honor erred in finding as a fact that the bond and mortgage of the defendant, S. J. Raysor, was assigned to the plaintiffs, Pittman Bros., by Moye, Moody & Co., in consideration of past indebtedness; because there is no evidence whatever sustaining such a conclusion of fact. 2. Because his Honor erred in finding that it appeared upon the face of the assignment from Moye, Moody & Co. to the plaintiffs that the same was made in consideration of past advances made by the plaintiffs to Moye, Moody & Co.; whereas it is submitted that the proper and obvious construction of the terms of said assignment is that the said advances were made in consideration of said assignment, and his Honor erred in not finding that the plaintiffs were entitled to a judgment for foreclosure under said complaint.

3. That the defendant having declared in said mortgage that the same was given for the benefit of her separate estate, the burden of proof was upon her to show that the estoppel thereby created was removed by the circumstances under which the plaintiffs took the assignment of the bond and mortgage securing the same, and the defendant failed to prove such circumstances; and his Honor erred in finding that the plaintiffs were not entitled to a judgment for foreclosure under said complaint. 4. That even if it were true that the mortgage was assigned by Moye, Moody & Co. to the plaintiffs for a past indebtedness, his Honor erred in finding as a matter of law that thereby the plaintiffs could not sustain an action of foreclosure; whereas it is submitted that a past indebtedness was a good consideration for the transfer, and the estoppel created against the defendant by her declaration was not in any manner impaired thereby, or the plaintiffs thereby deprived of the benefits thereof. 5. Because his Honor erred in holding that the position of the defendant was that of a surety in the execution of said mortgage; whereas it is submitted that said bond and mortgage so given by her was to enable her husband to purchase an interest in the business of Moye, Moody & Co., and it was not given to secure a debt of her husband, but was a gift which she was competent to make to her husband."

The defendant also gave notice that she would ask that the said decree be sustained, upon the following additional grounds: "1. Because it appears from the evidence in this case that M. A. Moye and H. J. Moody, the original mortgagees, who assigned the bond and mortgage herein to the plaintiffs, had full notice of the object and purpose of the execution of a bond and mortgage; that the same was given to secure a debt of the defendant's husband, and that they were not misled by the statement contained in the said mortgage that the same was given to secure a debt incurred for the benefit of defendant's separate estate; and, therefore, the plaintiffs, as assignees of the said bond and mortgage,

took the same subject to all the defenses which existed between the original parties to said contract. 2. Because the original mortgagees, Moye, Moody & Co., had full knowledge, at and before said bond and mortgage were executed and delivered, that the mortgagor, Mrs. S. J. Raysor, was thereby assuming the position of a surety for her husband in the purchase of an interest in the business of Moye, Moody & Co., and that, therefore, under the law, the said mortgage was absolutely null and void in its creation, and could not be revived afterwards by an estoppel. 3. Because the plaintiffs failed to show that they were misled by the declaration contained in the said mortgage, or that their assignees were misled to their prejudice by the said statement. 4. Because the assignees of a bond and mortgage under seal, as in this case, take the same subject to all the defenses existing between the original parties."

The exceptions raise the following questions: 1st. Was the mortgage executed by the defendant to secure the payment of her husband's indebtedness? 2d. Was the assignment of the mortgage to the plaintiffs in consideration of past indebtedness? 3d. Was the defendant estopped by her declarations in the mortgage from setting up the defense hereinbefore mentioned?

We will proceed to consider the question, whether the mortgage was executed by the defendant to secure the payment of her husband's indebtedness. At the time the mortgage was executed, section 2037 of the Revised Statutes contained the following provision: "A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to bind herself by contract, in the same manner and to the same extent as though she were unmarried, which contracts shall be legal and obligatory, and may be enforced at law or in equity by or against such married woman in her own name, apart from her husband: *Provided*, That nothing herein shall enable such married woman to become an accommodation indorser, guarantor or

surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person: *And provided further*, That the husband shall not be liable for the debts of the wife contracted prior to or after their marriage, except for necessary support, and that of their minor children residing with her." H. C. Raysor, when examined as a witness for the defendant, testified as follows: Examined by Mr. Holman: Q. Who is the defendant in this action, Mrs. S. J. Raysor? A. My wife. Q. Was she your wife at the time this bond and mortgage were executed? A. Yes, sir. Q. Where is Mr. A. B. Hooten? A. Dead. Q. Did you ever purchase an interest in the copartnership of Moye, Moody & Co., which was composed of M. A. Moye, H. J. Moody, and A. B. Hooten? A. Yes, sir. Q. That firm was dissolved and you became a partner in the place of Mr. Hooten? A. Yes, sir. Q. How did you secure the purchase of the one-third interest in the copartnership? A. I gave a bond and mortgage of 300 acres of land. Q. Who gave that bond and mortgage? A. My wife. Q. Was that, in any sense, her obligation, the purchase of that interest in the partnership—you acquired that? A. Yes, sir; not hers at all. Q. It was undertaken and obligated on your part, the purchase of that partnership with Moye, Moody & Co.? A. Yes, sir. Q. Did your wife, Mrs. Raysor, ever derive any benefit from your purchase of the interest in that store, that partnership business? A. No, sir, none at all. Q. Did you undertake, yourself, to become bound to the parties composing that firm for the purchase of an interest in that business? A. Yes, sir. Q. And this mortgage was given to secure your obligations in that behalf? A. Yes, sir. Cross-examined by Mr. Nathans: Q. Did you know that your wife, in that mortgage, had declared that the property was mortgaged for the benefit of her separate estate—did you know it? A. I don't know that I did. Q. You did not know that when she signed that mortgage that in it was a clause saying it was for the benefit of her separate estate? A. I never knew anything

about it.    Redirect by Mr. Holman: Q. There cannot be any question about the fact that you purchased an interest in this store, in this business, can there?    (Plaintiffs' counsel objects to the question on the ground that it is not in reply.)    A. None at all.    Q. And there can be no doubt about the fact that your wife had no direct interest in that matter?    A. None at all.    Q. Did Messrs. Moody, Moye & Hooten know at the time that this mortgage was given that you were making this purchase for yourself individually?    A. Yes, sir.    Q. Do you know who prepared this mortgage for your wife's signature?    A. It was prepared by Mr. Pittman.    Examined by Mr. Nathans: Q. Was that money paid by this mortgage the only money you gave that firm for your interest in that partnership?    A. That was all.    Recalled—examined by Mr. Patterson: Q. Who composed the firm of Moye, Moody & Co. at the time you bought an interest in that business? A. M. A. Moye, H. J. Moody, and A. B. Hooten.    Q. What interest did you purchase?    A. One-third interest.    Q. What did you give for that interest?    A. $1,500.    Q. Who then composed the new firm?    A. M. A. Moye, H. J. Moody, and H. C. Raysor.    Q. What was the style of the new firm, the name?    A. Moye, Moody & Co.    Q. Then the name was not changed by reason of your having purchased an interest and becoming a partner?    A. No, sir.    Q. How did you secure to the old firm the amount of your purchase, the payment of that $1,500?    A. I got my wife to execute a bond and mortgage of 300 acres of land.    Q. That is the bond and mortgage in suit?    A. Yes, sir. * * * Examined by Mr. Nathans: Q. You knew what the money was to be used for, did you not?    A. Yes, sir.    It was not for the benefit of her separate estate; she was merely becoming surety for me.    Q. Was she a copartner in that concern—whose name was it that went into the copartnership?    A. H. C. Raysor.    Q. And she was paying for your interest out of the money she obtained in this mortgage?    A. Yes, sir.    By Mr. Patterson: Q. Do you know if Mr. Pittman had that mortgage drawn?  · A. He sent it

to be signed; I only know that much. Recalled—examined by Mr. Patterson: Q. If you know anything of your own knowledge in reference to the preparation of that bond and mortgage, please state what you know. A. I know that the bond and mortgage was sent by Pittman to have it signed. Q. Sent to whom? A. To Moye, Moody & Co. Q. And did they turn it over to you? A. They turned it over to me. The foregoing was practically all the testimony introduced upon this question, the only other witness being A. J. Pittman, who, it seems, knew nothing as to the consideration inducing the execution of the mortgage. The testimony satisfies us that the presiding Judge was correct in his finding, that the defendant was merely a surety, and the exceptions raising this question are overruled.

We will next consider the question whether the assignment of the mortgage was in consideration of past indebtedness. The assignment was in the following words:

"State of South Carolina. In consideration of advances made by George W. Egan and A. J. Pittman, copartners as Pittman Bros., to M. A. Moye, H. J. Moody, copartners as Moye, Moody & Co., we, M. A. Moye and H. J. Moody, do hereby assign, transfer, and set over the within mortgage unto G. W. Egan and A. J. Pittman, copartners as Pittman Bros., their executors, administrators, and assigns. Witness our hands and seals this       day of       , A. D. 1894. M. A. Moye [L. S.], H. J. Moody [L. S.]. Signed, sealed, and delivered in the presence of J. P. Moody, S. M. Pressley."

The testimony of A. J. Pittman throws no light whatever on this question. In the absence of testimony showing when the advances were made, this Court is of the opinion that the advances mentioned in the assignment were made before it was executed. If the assignment had mentioned that it was made in consideration of so many dollars, the appellant might well contend that it meant money paid at the time of the assignment, as money is easily carried about the person. The manner, however, in which advances are

made affords a presumption that they were not made at the time the instrument of writing was executed. When, therefore, the words "advances made" are used, their meaning, when unexplained, is, that they refer to those previously made. We are more inclined to reach this conclusion by reason of the fact that the plaintiffs had it in their power to show when the advances were made, and failed to do so.

We next proceed to consider the last question, whether the defendant was estopped by her declarations in the mortgage from setting up the defense hereinbefore mentioned. The mortgage, in referring to the bond hereinbefore mentioned, contains the declaration that the bond was given for a debt incurred for the benefit of the defendant's separate estate. Having reached the conclusion that the defendant was a surety, and that the assignment of the mortgage was made in consideration of past indebtedness, it is conclusively settled by the cases of *Gibson* v. *Hutchins*, 43 S. C., 288; *British & American Mortgage Co.* v. *Smith*, 45 S. C., 83, and cases therein cited, that the assignee took subject to all the equities existing between the original parties. The defendant did nothing after the execution of the mortgage to induce the plaintiffs to take the assignment, and as nothing was done by her which gave the plaintiffs higher rights than those of the mortgagees, they necessarily took subject to all equities. If the declaration contained in the mortgage had been made to the plaintiffs, and the defendant had induced them to part with something of value upon the faith of such declaration, she would undoubtedly be estopped by such conduct. That, however, is an entirely different principle from the one on which this case rests. The exceptions raising this question are also overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.