9620

HEYWARD-WILLIAMS CO. v. ZEIGLER *ET AL.*

(91 S. E. 298.)

1. TRIAL — MOTION TO DIRECT VERDICT — IN EFFECT A DEMURRER.—A motion to direct a verdict for the reason that defense "is not sound" is in effect a demurrer because allegations are not sufficient to constitute a defense.

2. PAYMENT—APPLICATION—QUESTION FOR JURY.—In action on defendant's notes given plaintiff in payment under contract for fertilizer sold by defendant to planters, where defendant shipped to plaintiff cotton received from planters without direction on what debt to apply it, and plaintiff claimed this was to be applied on another indebtedness, evidence *held* sufficient to submit case to jury.

3. PAYMENT—APPLICATION OF PAYMENT.—Where defendant received cotton from planters in payment for fertilizer sold by defendant and furnished by plaintiff under contract, *held,* that defendant took the cotton as trustee for plaintiff, to be applied on planters' notes, and hence when plaintiff received it from defendant, it could be applied only on defendant's contract indebtedness.

4. SALES—BONA FIDE PURCHASER—CONSIDERATION.—Past indebtedness is not a sufficient consideration to constitute the relation of a purchaser for valuable consideration without notice.

Before RICE, J., Barnwell, July, 1916.    Reversed.

Action by the Heyward-Williams Company against P. J. Zeigler and another.    Judgment for plaintiff, and defendants appeal.

*Messrs. Jas. M. Patterson* and *R. P. Searson, Jr.,* for appellants, cite: *As to verification of amended reply:* Code Civ. Proc., sec. 206; 37 S. C. 413; 73 S. C. 193; 57 Fed. 186; 129 Fed. 792. *Affirmative defense to counterclaim:* Code Civ. Proc., sec. 212. *Application of payments:* 123 N. C. 538; 32 S. C. 277; 70 S. C. 489.

*Messrs. C. B. Searson, J. W. Vincent* and *James A. Willis,* for respondent. *Mr. Vincent* cites: *As to application of payments:* 8 S. C. Eq. 430; 19 S. C. Eq. 66; 31 S. E. 819. *Notes admitted:* 24 S. E. 74; 79 S. C. 578. *Direction of verdict:* 157 U. S. 154; 195 Fed. 362.

. February 10, 1917.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action on three promissory notes executed by the defendants, on the 9th day of March, 1914, in the respective sums of $801.90, $1,055, and $1,000, payable to the plaintiff. On the same day the plaintiff addressed to the defendants a proposed contract, which was accepted by them, as appears by the following indorsement thereon:

"Your offer is hereby accepted upon the terms and conditions in this contract. Mrs. Virginia S. Zeigler, P. J. Zeigler."

The contract contains the following provisions:

(1) "For the season ending May 1, 1914, we will ship to you upon the terms and conditions stated herein * * * the following specifically named amounts and kinds of fertilizer * * * to be settled for, by your note or notes, as sent you. * * *"

(2) "On May 1st, next, or prior thereto, on demand, you agree to deliver to us or upon your order, notes of the planters or other purchasers to whom you may have sold these goods or any of them, for the gross amount of the sale of same, to be held by us as collateral security, for the payment of your obligations, as above stated; in the mean while, all said goods, notes or proceeds thereof are to be held in trust by you as collateral security for the payment of your notes to us, until all your obligations have been settled, and are to be subject at all times to our order; it is expressly agreed that all cash proceeds, from any of said notes or goods as collected, shall be immediately applied to your obligations to us, whether same shall have matured or not. * * *"

(11) "This contract, written and printed, constitutes the entire agreement, and no verbal understanding will be recog-

nized, and this contract is made subject to approval indorsed thereon, at our office in Savannah, Ga."

The contract shows that the plaintiff's approval was accordingly indorsed thereon. The defendants rely upon the following facts as a defense: That the notes in suit were executed by them in compliance with the terms of said contract. That in accordance with the second clause of the contract, the defendants sent to the plaintiff the notes and mortgage on the cotton crops of those planters, who purchased fertilizers from them. That during the latter part of August, and up to the 15th of September, 1914, said planters delivered to these defendants 53 bales of cotton, covered by said mortgages, to be applied to the notes and mortgages of said planters; and, by agreement, said cotton was sold by the plaintiff on the 14th of September, 1914, for $2,030, which cotton, they allege, the plaintiff well knew belonged to said planters, whose notes and mortgages were then held by the plaintiff as collateral security for the payment of the notes in question. That the said cotton was by operation of law applicable to the payment of said mortgages, and was by the terms of the contract applicable to the notes in suit instead of the individual indebtedness of P. J. Zeigler.

At the close of the testimony the plaintiff made a motion for the direction of a verdict on the following ground: "That the defense attempted to set up, by the defendants, based upon the contention that the proceeds of the sales of the cotton should have been applied to the notes sued on, in this action is not sound, and the said proceeds have been credited on one of the notes of P. J. Zeigler, which credit the plaintiff had the right to make."

His Honor, the presiding Judge, granted the plaintiff's motion, and the defendants appealed. The motion to direct a verdict on the ground therein stated was, in effect, a demurrer on the ground that the allegations of the answer were not sufficient to constitute a defense. The respondent's attorneys say:

"The evidence, we submit, shows that the cotton was shipped by P. J. Zeigler, as an individual, and as he owed the plaintiff on other notes the plaintiff had the right, in the absence of direction from him, to apply the credit for the cotton to whichever note the plaintiff saw fit."

Their proposition is thus stated in a different form:

"The defendant, P. J. Zeigler, is a maker of the notes. He owed another note to the plaintiff, which was his note alone, without any directions, and without any connection with Virginia S. Zeigler, the plaintiff had the right to assume that the cotton was the individual cotton of P. J. Zeigler, and to credit any debt owing by him with the proceeds of sale."

The provision in the contract that "it is expressly agreed that all cash proceeds from any of said notes or goods as collected shall be immediately applied to the payment of your obligations to us whether same shall have matured or not" shows that the cotton in question was applicable to the joint indebtedness of Virginia S. Zeigler and P. J. Zeigler. Therefore it could not be applied to the individual debt of P. J. Zeigler, unless all parties to the contract consented to such application, of which fact there is no testimony whatever.

P. J. Zeigler testified as follows:

"Q. Mr. Zeigler, did you in compliance with that contract send down these farmers' notes to the plaintiff? A. We did. Q. Now, Mr. Zeigler, I will ask you this: State as a matter of fact whether or not that 53 bales of cotton was shipped in compliance with and to be applied on that contract? A. It was shipped in compliance with the contract. Q. State whether or not the 53 bales of cotton was covered by the farmers' notes and shipped in compliance with those notes? A. It was covered by the farmers' notes and shipped under those notes. Q. Was that cotton marked with the farmers' marks? State how the cotton was marked? A.

The cotton was all marked with a private mark, showing how the cotton was received by me."

This testimony shows that in any view of the case the facts should have been submitted to the jury, especially as it was admitted that there were no directions as to the manner in which the cotton was to be applied when it was shipped to the plaintiff; and the contract provided that it should be applied to the notes in suit.

The respondent's attorneys also rely upon the folowing proposition:

"If it be conceded that the proceeds of the sale of mortgaged property must be applied to the mortgage debt, in the absence of instruction or direction as to application, this does not affect the matter at bar. As between the mortgagor and Zeigler, this law might be pertinent, but only the makers of those mortgages could raise this question. When the cotton reached Zeigler's hands without this question being raised the cotton became the property of Zeigler just as if he had purchased same, with cash. He could then make such disposition of such cotton as appeared to him best. When the cotton reached plaintiff it was divested of any such character as it had when it came into the hands of Zeigler."

When the defendants sold the fertilizers, under said contract, the purchaser executed mortgages on their cotton crops, and these mortgages were delivered by the defendants to the plaintiff in accordance with said contract. The 53 bales of cotton in question were covered by said mortgages. When the cotton was delivered to the defendants their only authority under the contract was to ship it to the plaintiff, to be credited on their joint indebtedness. If the proposition for which the respondent's attorneys contend is sound, then Zeigler had the right, not only to apply the cotton to his individual indebtedness, to the plaintiff, but also to convert it to his own use in any other manner he saw fit, and thereby destroy the plaintiff's collateral securities.

When the cotton was delivered by the mortgagors to the defendants, they did not come into possession of it in their own right, but as trustees for the plaintiff under the terms of the contract. Therefore it cannot be successfully contended that when the cotton came into the hands of Zeigler the effect was the same as if he had purchased it with cash; nor that it was divested of the lien created by the mortgages when he received it. The delivery of the cotton to the plaintiff had a double effect: Under the terms of the contract, the plaintiff, as we have said, was required to apply it to the notes in question; and the respective shares of the mortgagors in the cotton were, by operation of law, applied to the satisfaction of the several mortgages in full or *pro tanto*. *McSween* v. *Windham,* 104 S. C. 509, 89 S. E. 500.

There is yet another reason why there was error in directing the verdict. Even if it should be conceded that the delivery of the cotton to the plaintiff constituted it a purchaser, it was not, however, entitled to the rights of a purchaser for valuable consideration without notice, as it did not part with anything of value at the time the cotton was delivered to it, nor was there any agreement between P. J. Zeigler and the plaintiff that any consideration whatever was to be paid. There was not even an agreement that the cotton was to be credited on the previous indebtedness of P. J. Zeigler; but if there had been such an agreement it would have been of no avail to the plaintiff, as past indebtedness is not a sufficient consideration to constitute the relation of purchaser for valuable consideration without notice. *Pittman* v. *Raysor,* 49 S. C. 469, 27 S. E. 475.

On the 9th of March, 1914, the defendants executed a mortgage in favor of the plaintiff on certain personal property. We do not now, however, deem it necessary to con-

sider the provisions of that mortgage, as none of them are
inconsistent with the views we have expressed.

Judgment reversed, and case remanded for new trial.