### In re F. H. SAUNDERS & CO.

### In re FARMERS' & MERCHANTS' BANK OF MARION, S. C.

(District Court, E. D. North Carolina. April 20, 1921.)

Bankruptcy ⟨⟩184(2)—Chattel mortgages, recorded out of time, valid as against general creditors.

Under Code S. C. 1912, § 3542, as amended by Acts 1914, p. 482, providing that mortgages shall be valid, so as to affect the rights of subsequent creditors without notice from the time of their execution only when recorded within 10 days from time of execution, with a proviso that "the recording and record of the above mentioned deeds and instruments subsequent to the expiration of the said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deed or instrument of writing had been executed and delivered on the date of the record thereof," a chattel mortgage executed by a bankrupt in good faith for a present valuable consideration and not voidable as a preference, recorded after the 10-day limit, but prior to bankruptcy, *held* valid as against all general creditors, including those who became such between the time of execution and recording of the mortgage.

In Bankruptcy. In the matter of F. H. Saunders & Co., bankrupts. On claim of the Farmers' & Merchants' Bank of Marion, S. C. Validity and priority of chattel mortgage sustained.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

L. D. Lide and H. S. McCandlish, both of Marion, S. C., for claimant.

A. F. Woods and J. W. Johnson, both of Marion, S. C., F. S. Spruill, of Rocky Mount, N. C., and H. G. Connor, Jr., of Wilson, N. C., for trustees.

CONNOR, District Judge. On January 7, 1920, the Farmers' & Merchants' Bank of Marion, S. C., filed its claim, or petition, in this court, containing the following allegations which are found by the special master to be true:

That on July 15, 1919, the bank advanced and loaned to F. H. Saunders & Co., at Marion, S. C., $10,000, for which amount the said Saunders & Co. executed their promissory note, due and payable 60 days after date, and on the same day, and cotemporaneous with the execution of said note, and as security for the payment thereof, executed and delivered to said bank a mortgage on—

"All leaf tobacco purchased. and to be purchased. by us during the season of 1919 on the Marion. S. C., market, and on all drafts drawn against shipments of same and on all the proceeds arising from the sale thereof."

The mortgage was admitted to probate on the 29th day of July, 1919, and registered in Book 33, page 487, in the office of the clerk of the court of common pleas of Marion county. On the 6th day of September, 1919, a petition for adjudication in bankruptcy was filed against said F. H. Saunders & Co. in the District Court of the United States for the Eastern District of North Carolina, and on the 4th day of October, 1919, they were adjudged bankrupts, and the trustees duly elected and qualified.

On the 28th day of August, 1919, said F. H. Saunders & Co. had to their credit in the bank the sum of $1,938.34, which was credited on said note and the account balanced. There remained due and unpaid on said note, after crediting same with said amount, $8,061.66. The bank on the ———— day of August, 1919, seized and sold—

"Certain leaf tobacco purchased by F. H. Saunders & Co., at Marion, S. C., and located in the respective warehouses at Marion. S. C., and at the depot of the Atlantic Coast Line Railroad Company for the sum of $9,125, covered by said mortgage."

After paying the cost incurred in seizing and selling said tobacco, including an attorney's fee of $350, and applying the balance of the proceeds of the sale of said tobacco to the discharge of the balance due on said note, the sum of $559.78 remained in the possession of said bank. On January 10, 1920, the bank filed its claim setting forth the foregoing facts.

The trustees of F. H. Saunders & Co., bankrupts, on April 20, 1920, in due time filed objections to the claim of said bank, insisting that the mortgage did not constitute a valid lien on said tobacco, and that the bank was not entitled to hold the proceeds thereof, or apply same to the payment of said note, for that: (1) The mortgage constituted a voidable preference under the provisions of section 60b and section 67e of the Bankruptcy Act (Comp. St. §§ 9644, 9651); (2) that the said

mortgage did not, at the date of the filing of the petition herein, September 6, 1919, or at the date of the adjudication, October 4, 1919, constitute a valid lien on said tobacco, because it was not registered within 10 days after the execution or delivery thereof, as required by the statute of South Carolina relating to the registration of mortgages. The bank filed its answer to the objections of the trustees.

Pursuant to the request of the creditors of F. H. Saunders & Co., the court made an order of reference to F. H. Bryan, Esq., special master, to hear the objections to the claim of the bank and report his conclusions thereon to the court. The special master, after hearing the testimony, filed his report September 29, 1920, whereupon the cause was heard upon the said report at Wilmington, N. C., on November 20, 1920.

In addition to the foregoing facts the special master found:

"That the loan was made by the bank to F. H. Saunders & Co. in good faith and without knowledge or reason to believe the existence of the insolvency of the said F. H. Saunders & Co." That on July 29, 1920, the date of the registration of the mortgage, the bank had no knowledge, or reasonable cause to believe, that said Saunders & Co. were insolvent. That there was no fraud, nor collusion, connected with the transaction. That the proceeds of the note were actually advanced and placed to the credit of Saunders & Co. and drawn out by checks for the purchase of tobacco.

The special master dealt with the questions presented upon the record in the following order:

(1) Is the said claim of the Merchants' & Farmers' Bank a voidable preference, under the provisions of section 60b, amendment of 1910?

The special master found that, at the date of the execution and of the registration of the mortgage, July 29, 1919, the bank had no reasonable cause to believe that F. H. Saunders & Co. were insolvent. This constitutes the test of a voidable preference under the provisions of the amendment of 1910 to section 60b of the Bankruptcy Act. I find nothing in the evidence to show the existence of such reasonable ground to believe that the mortgagor was insolvent, or that the effect of the mortgage would be to give a preference.

(2) Is the mortgage a voidable preference under the provisions of section 67d?

It is manifest that the execution of the mortgage was based upon a present consideration, was made in good faith and not in contemplation of, or in fraud of, the act, thus coming clearly within the protective provisions of the subdivision "d," section 67.

(3) The third question presented upon the record involves the construction of the registration laws of South Carolina. The question is not free from difficulty.

The Marion National Bank loaned money to, and thereby became a simple contract creditor of, F. H. Saunders & Co., subsequent to the execution, and prior to the registration, of the mortgage to the Farmers' & Merchants' Bank, and at the date of the adjudication in bankruptcy of Saunders & Co., said bankrupts were, and are now, indebted to said Marion National Bank on account of such loan. The bank had no knowledge or notice of the execution of the mortgage, at the time of making said loan, nor until its registration.

C. M. Jones, of Marion, S. C., also made advances to Saunders & Co., between the date of the execution and the date of the registration of said mortgage, without notice thereof. No lien was acquired by either of said simple contract creditors upon the property of Saunders & Co., prior to the registration of the mortgage or their adjudication in bankruptcy. They have proven their debts as simple contract creditors. It does not appear that any other liens attached to the property of the bankrupts, covered by the mortgage, prior to the registration thereof, or to the adjudication of the bankrupts.

For the purpose of fixing the status of the Farmers' & Merchants' Bank and the trustees, who represent and may enforce all of the rights of the creditors against the property of the bankrupts, reference must be made to the provisions of section 70a of the Bankruptcy Act (Comp. St. § 9654). Collier on Bankruptcy (11th Ed.) 1106.

"The trustee of the estate of a bankrupt, upon his appointment and qualification * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt."

While not affecting the question presented here, it will be noted that in Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, Mr. Justice Day says:

"There are other provisions of the statute which, we think, evidence the intention to vest in the trustee the title to such property as it was at the time of the filing of the petition"—citing Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208.

It is further said by Judge Day:

"Section 70a vests all the property in the trustee, which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

The courts have uniformly held that the title to the property of the bankrupt vested, by operation of law, in the trustee, subject to all liens which had, prior to the date of filing the petition, attached thereto. The right of the creditors to attack such liens for fraud or other invalidating element vested in the trustee. Hewit v. Berlin Machine Co., 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. For that purpose section 70e provides that "the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided." Section 67a provides that "claims which, for want of record, * * * would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate," and the trustee may maintain such action for the recovery of such property as a creditor holding a lien thereon could have maintained. The question to be solved, therefore, is whether the mortgage held by the bank, at the date of the filing of the petition or adjudication of Saunders & Co., bankrupts, constituted a valid lien upon the tobacco seized by the bank as against the simple contract creditors of Saunders & Co.

The answer to this question depends upon the construction to be given to the registration law of South Carolina, at the date of the execu-

tion and registration of the mortgage. No authoritative decision of the Supreme Court of South Carolina is cited, and it is conceded none may be found, rendered since the statute was amended by the act of 1914, (Laws 1914, p. 482) and as it existed at the date of the mortgage. I have examined the cases decided by the court which have, or are supposed to have, any bearing upon the question.

It is conceded that, whatever the law may have been in regard to the registration of mortgages and its effect upon the rights of creditors, prior to the act of 1843 (11 St. at Large, p. 256), it was at that time enacted in express terms:

"That a mortgage is invalid as against subsequent creditors for valuable consideration, unless the same shall be recorded in the office of the register of mesne conveyances within sixty days after execution."

In Piester v. Piester, 22 S. C. 139, 53 Am. Rep. 711, it appeared that Piester executed a mortgage to secure a valid obligation, November, 1869, and a second mortgage December 21, 1869. The mortgages were not recorded until August, 1872. The mortgagor became indebted to one Wright April 7, 1871, who had no notice of the existence of the mortgages. The mortgagor died and the question was presented in the settlement of his estate whether the mortgage was a valid lien as against Wright. For the present purpose it is sufficient to find that, under the provisions of the act of 1843, it was held that—

"If these mortgages had been recorded before Wright's note arose, though later than 60 days after execution, this would have constituted constructive notice. But this was not the case, and as the act declares them 'invalid,' so as to affect the rights of one in Wright's position, it seems impossible to escape the conclusion that these mortgages cannot affect Wright's claim as to the estate of the debtor therein conveyed."

Other questions were presented and discussed, none of which are material to the decision of the instant case.

The Legislature, at its session of 1876 (16 St. at Large, p. 92), re-enacted, so far as the statute affects the rights of the parties in this case, the act of 1843, fixing the time within which the mortgage was required to be registered at 40 days, and providing that mortgages registered within 40 days after execution and delivery—

"shall be valid, so as to affect, from the time of such delivery or execution, the rights of subsequent creditors. * * * Provided, nevertheless, that the above mentioned deeds or instruments in writing, if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration, without notice, only from the date of such registration."

At the April term, 1885, and while the act of 1876 was in effect, the case of King v. Fraser was before the court. 23 S. C. 543. It appeared from the report of the master that one Doar held a mortgage on certain property, executed in February, 1877, and recorded January 7, 1879. Between these dates the mortgagor became indebted to other persons, who were, at the date of the registration of the mortgage, general creditors, without notice of Doar's mortgage until its registration. The controversy arose as to the rights of Doar under his mortgage and the subsequent general creditors of the mortgagor, in respect to the distri-

bution of the proceeds of the sale of the property mortgaged. The master to whom the cause was referred, filed an elaborate and able report. Referring to the act of 1843 as a new departure in the registration laws of the state, he said:

"It is evidently a well considered effort to deal effectively with the whole subject of registration."

The master was of the opinion that the mortgage held by Doar, not having been recorded within 40 days after its execution, as required by the act, was not a valid lien as against creditors of the mortgagor whose debts were contracted between the date of its execution and its registration. Hudson, Circuit Judge, overruled the exceptions in this respect and confirmed the report of the master. Upon appeal Mr. Justice McGowan said the question was:

"Whether the omission on the part of the executors of Doar to put their mortgage on record within 40 days after its execution, although recorded afterwards and before the commencement of this suit, made it absolutely invalid as to all debts of the mortgagor contracted between its execution and registry; that is to say, whether a mortgage recorded, after the time prescribed by law, has a lien, as of that date, with the ordinary incidents of a lien, as to all debts which at that time are unsecured or shorn of these incidents, as to that class of debts which were contracted between the execution and the delivery thereof. This is a new question in this state, the precise point, so far as we know, never having arisen before; and it is certainly one not free from difficulty, arising principally from the terms of the general registration act of 1876."

The learned justice entered upon the discussion of the subject by expressing his concurrence with the statement that—

"There is no subject upon which our law has been more confused and obscure than that of registry, both as to the effect of omission to record, and of recording within as well as after the time prescribed by law."

He said:

The act of 1876, after prescribing that mortgages "'shall be valid so as to affect, from the date of such delivery or execution, the rights of subsequent creditors * * * without notice, only when recorded within forty days from the time of such delivery or execution: * * * Provided, nevertheless, that the above mentioned deeds or instruments in writing, if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration without notice, only from the date of such record.'

If this section were to be considered without reference to the proviso there would be little difficulty. Ignoring the proviso, it is clear that the body of the section declares that, without recording, none of the instruments referred to would be valid as to any debts 'without notice,' whether contracted before or after the date of the instrument in question; but it goes on to provide that, if recorded within the time prescribed, said instrument shall be valid even as to 'all subsequent creditors, without notice' reaching back to the time of the delivery of the instrument. Without the proviso the section would be substantially the same as the act of 1843 in reference to mortgages, which was several times before this court. * * * But the addition of the proviso in the act of 1876 makes a very material change in the law, applying to the registry of mortgages substantially the same rules which were declared" to be applicable "to the registry of absolute conveyances in Steele v. Mansell, 6 Rich. 438. * * * There cannot be the least doubt that this proviso was intended to give to a mortgage, though recorded out of time, some 'effect' upon the class of creditors indicated; not, however to reach back to the date of

the mortgage, as in the case of one recorded within time, but only from the time of recording."

The learned justice disposes of the question, so far as it relates to liens acquired before the registration, after the expiration of the time limit, saying:

"Of course the lien so acquired has priority over the mortgage. So far * * * there is no difficulty, but the matter is not so plain as to what is the effect of a mortgage recorded after the time upon general debts contracted after its execution without notice, and which are found in the condition of unsecured debts at the time the mortgage is recorded and its lien attaches. It is certainly the general rule that a bona fide lien, no matter when entered, from that time forth has priority over all debts which are then unsecured, without the least regard to their date."

After stating the contention made by the "subsequent creditors," whose debts were contracted after the date of the mortgage, and before its registration, Judge McGowan says:

"For several reasons we hesitate to accept this view. In order to reach a satisfactory conclusion on the point, it is necessary first to settle clearly who are the persons meant by 'subsequent creditors and purchasers without notice.'"

He concludes that the words "subsequent creditors" refer to those whose debts were contracted subsequent to the execution of the mortgage. The same phrase found in the proviso, he says, has reference to the same class of creditors, and not to those whose debts were contracted subsequent to the recording.

"This being clearly settled, it would seem that the terms of the proviso itself negative the idea that a mortgage registered out of time is absolutely null and void as to all debts contracted between the execution and registry thereof, for it declares in express terms that such mortgage so registered 'shall be valid so as to affect the rights of subsequent creditors,' etc. It seems to us that there could never have been a doubt upon the subject, but for the last clause in the proviso, which makes the ambiguous declaration that such effect shall be 'only from the date of such record,' which, it is contended, limits the lien of the mortgage after registry to future debts, leaving the rights of the class of prior creditors before described entirely unaffected as they existed before registry."

After stating his reasons for rejecting this construction of the proviso, Judge McGowan says:

"Considering the subject-matter and the context, we cannot doubt that the phrase 'from the date of such record' was intended, not to fix that as the point from which the lien of the mortgage was to operate forwards, but simply to indicate the time at which it received vitality, or, in other words, that the registry fixed the time at which the mortgage becomes a lien, but not the date of the debts which, as such, it might affect, according to the condition, as to being secured or unsecured, in which they were found at the time. * * * To say that a mortgage shall be valid means, of course, valid as a mortgage; that is to say, a lien upon specific property, with the ordinary incidents of such lien, one of which is priority as to that particular property over all other debts of the mortgagor, which have not prior to that time ripened into a lien."

In conclusion he says:

"We can conceive of no effect of recording other than the putting an end to the exemption which arose from want of notice, and continued until notice

was given by that recording, that the registry giving them notice at the same moment gives vitality to the mortgage as a lien with priority, as if the old mortgage had never existed and a new one had been executed and recorded on that day, the exemption arising from want of notice ceasing to exist as soon as notice is given;"

—quoting with approval the language of Judge Wardlaw in Steele v. Mansell:

"Being without registration good as to the party who made it, the deed might, as to all other persons, be considered as if it had been executed on the day it was registered; in other words, as if it had been executed and acknowledged on that day. By delaying beyond a prescribed time, the grantee in a deed (or a mortgagee) has lost the right to insist that the tardy registration shall have relation to the date of the deed so as to provide against intervening claims; but why should he lose the benefit of registration from the day it was made?"

Judge McGowan reached the conclusion that—

"The Doar mortgage, although recorded out of time, from that date became valid as a lien, and as such had priority over all the general debts of the mortgagor which had not then become liens, regardless of the time they were contracted as prior or subsequent."

Mr. Justice McIver dissented from this conclusion. A petition to rehear was denied.

There would seem to be no room for doubt that, unless this decision has been reversed, or the statute so amended as to work a change in the law, the mortgage held by the Farmers' & Merchants' Bank, although recorded out of time, is a valid lien from the date of its registration, as against general creditors of the mortgagor whose debts were contracted between the date of its execution and registration, and in respect to which no liens had attached prior to the registration of the mortgage.

At the session of 1898 (Laws 1898, p. 746) the Legislature re-enacted the act of 1876, whereby all mortgages are declared to—

"be valid, so as to affect from the time of their delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) * * * without notice, only when recorded within forty days from the time of such delivery or execution." etc. "Provided, nevertheless, That the recording or record of the above mentioned deeds or instruments of writing subsequent to the expiration of said forty days shall from the date of such record operate as notice to all who may subsequently thereto become creditors or purchasers."

By the act of 1909 (Laws 1909, p. 189) the time within which mortgages were required to be recorded was changed from 40 to 10 days. It will be noted that the words "whether lien creditors or simple contract creditors" are inserted in the amended act, and the record of the mortgage out of time is made by the proviso of 1898 "from the date of such record" to "operate as notice to all who may subsequently thereto become creditors." This change in the language of the proviso becomes of interest, in view of the decision of the court in Brown v. Sartor (1910) 87 S. C. 116, 69 S. E. 88.

In that case the plaintiff brought suit to foreclose a mortgage executed by defendant on May 1, 1905, and recorded May 2, 1905. The de-

fendants, other than the mortgagor, held liens on the property subordinate to plaintiff's mortgage, as follows: Thomas Barrett and others, trustees, mortgage executed October 6, 1905, and recorded January 6, 1908. Gist and others, receivers, mortgage April 18, 1907, and recorded November 27, 1907. Merchants' National Bank of Richmond held a judgment rendered May 28, 1909, subsequent to the registration of both mortgages, upon debts contracted subsequent to the execution of both mortgages. The Union Building & Loan Association held a judgment of September 19, 1908. T. W. Norwood held notes against the common debtor contracted subsequent to the execution of the two mortgages held by Barrett and Gist, which were not reduced to judgment. He had no notice of the mortgage at the time his debts were contracted. Plaintiff's mortgage was paid from the proceeds of the sale of the property. Mr. Justice Woods thus states the contention of the parties:

"All agree that neither the mortgage held by Barrett and others, as trustees, nor the mortgage held by Gist and others, as receivers, can have any preference over the Merchants' Bank of Richmond or J. W. Norwood, for the reason that the mortgages were not recorded within the time required by the statute, and the Merchants' Bank and Norwood became creditors * * * without notice of these mortgages. This being so, Norwood claims, as between him and the other creditors, that his right is to have the entire proceeds of sale remaining after payment of the plaintiff's mortgage applied pro rata to the payment of his debt, along with the two mortgage debts and the debt of the Merchants' Bank now in judgment. In opposition to this claim of Norwood, the Merchants' Bank insists that, by obtaining judgment on its claim, it acquired a lien on the property by reason of which it is entitled to have the entire proceeds of sale applied to the satisfaction of its debt to the exclusion of the mortgage debts and the debt of Norwood, which is not in judgment.

Laying aside for the moment the claim of the mortgagees against each other, we consider first whether the Merchants' Bank, has, by virtue of its judgment, any preference over the mortgages. The precise point here involved has not been decided under our statute, but from a consideration of the scope and object of the statute on the subject (Civil Code 1902, § 2456) it seems perfectly clear that the judgment has no such preference over the mortgages.

The statute makes the mortgages of no effect against the Merchants' Bank and Norwood as subsequent creditors without notice, because of the lack of record within forty days. But the statute also provides that the recording, 'subsequent to the expiration of said forty days shall from the date of such record, operate as notice to all who may subsequently thereto become creditors or purchasers.' The right of subsequent creditors to assert mortgages not recorded within the statutory time to be void against them is fixed by the Statute and cannot be changed by the recording out of time. If the subsequent creditor has no lien at the time of the recording beyond the 40 days, then he stands on an equal footing with the mortgage creditor. If he has acquired a lien, then he must be satisfied first."

While the learned justice makes no reference to the proviso in the act of 1876 and the construction placed upon it in King v. Fraser, it would seem clear that this conclusion is based upon the view that the proviso in the act of 1898 worked a radical change in the status of a mortgage recorded out of time with reference to the rights of subsequent creditors, who had not acquired a lien at the date of recording the mortgage. It would seem that, under the decision in King v. Fraser, both mortgages, having been recorded out of time, would have taken

priority over the Merchants' Bank, because its judgment was rendered after the record, and Norwood had never acquired any lien. Judge Woods proceeds to say:

"But for all other purposes, after the mortgage has been recorded, though after the statutory limit, it is to be regarded as if a mortgage had been made as of the day of record, having a lien from the date of the recording which cannot be displaced by any lien subsequently acquired by record or otherwise. This is the principle laid down in Steele v. Mansell, 6 Rich. 442, King v. Fazier, 23 S. C. 543, and Carraway v. Carraway, 27 S. C. 576. * * * The rule which the statute was intended to establish, and we think its plain meaning, is that mortgages not recorded within the time fixed are invalid as to subsequent creditors whose debts were contracted before actual record, but that after actual record no superior lien can be acquired by judgment or otherwise."

The practical result of the conclusion reached by Judge Woods, so far as it relates to the question presented here, is that the mortgage held by Barrett and Gist were entitled, as against the Merchants' Bank and Norwood to share pro rata in the entire surplus proceeds of sale, neither having any prior lien as against the Merchants' Bank and Norwood. There were other phases of the controversy disposed of by the opinion, not material to the question presented here. It is not suggested in the arguments, or briefs of counsel, that the decision in Brown v. Sartor overrules, or is inconsistent with, King v. Fraser. The last case is based upon the proviso contained in the act of 1898, and, I assume, is to be taken as the law of South Carolina upon the subject unless changed by later legislation.

We are thus brought to a consideration of the question in the light of the act of 1914. The only change made in the act of 1898, by this act, was to strike out the proviso and insert in lieu thereof the following:

"Provided, nevertheless, that the recording and record of the above-mentioned deeds and instruments * * * subsequent to the expiration of said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deed or instruments of writing had been executed and delivered on the date of the record thereof."

While counsel for the trustees earnestly contend for a contrary construction of this proviso, I venture to think that the Legislature intended what it said—that the mortgage, recorded out of time, was deprived of its validity by relation to the date of its execution, as to debts contracted subsequent to its execution and before registration, but was a valid lien as against all debts in respect to which no lien had attached, from the date of its registration—as if the mortgage had been executed on the date of its registration; in other words, the Legislature crystallized into a statute the construction put upon the act of 1876 by the Supreme Court in King v. Fraser, supra. While not of controlling force, it is significant that the proviso of 1914 is in substantially the same language as the second headnote to King v. Fraser.

It is of interest to note that, while the words "whether lien creditors or simple contract creditors" are for the first time found in the act of 1898, and re-enacted in 1914, the proviso of 1914 gives to the regis-

tration of the mortgage "subsequent to the expiration of ten days * * * the same effect as to the rights of all creditors and purchasers without notice as if * * * executed and delivered on the date of the record thereof." It would seem that the words "whether lien creditors or simple contract creditors" were inserted in the act of 1898 to remove any doubt as to the extent of the retroactive effect of registration within the 10-day limit, and to exclude all doubt as to the intention to give to the registration, out of time, the same effect as a mortgage executed on the day of its registration, the comprehensive words "all creditors" were used.

It may be that the construction put upon the proviso of 1898 in Brown v. Sartor was not in accordance with the legislative mind, and the amendment of 1914 was intended to restore, in unmistakable terms, the proviso of 1876 as construed in King v. Fraser. It is worthy of note that, so far as the industry of counsel discovers, the act of 1914 has not been construed by the Supreme Court of South Carolina, although it has been in effect 7 years.

Counsel call attention to a decree rendered by Circuit Judge Purefoy, presiding in the court of common pleas of Hampton county, in Nellwood Lumber Company v. Vincent, from which no appeal was taken. Upon an agreed state of facts the question was presented respecting the effect of the registration of a lease "out of time," as against simple contract creditors without notice, whose debts were contracted subsequent to the execution but prior to the registration of the lease. The learned judge, quoting the language of the proviso to the act of 1914, says:

"I am of the opinion that this amendment means exactly what it says, and consequently from the above statement of facts the lease of Nellwood Lumber Company to Starr and Patrick would be considered as executed as of the date it was recorded, and therefore valid as to all simple contract creditors whose claims arose between the date of the execution and the date of the record."

It is difficult to understand why, if, as provided by the statute, within the time limit within which the mortgage should be recorded to give to it a lien as against both lien and simple contract debts by relation to the date of its execution, it should not, as provided by the proviso, be given a lien from the date of its registration as to "all creditors," as if it had been executed on the day upon which it was recorded. Whatever doubt lurked in the language of the proviso to the act of 1876 was so resolved in King v. Fraser, supra. The act of 1898 and proviso thereto was so construed in Brown v. Sartor, supra, as to nullify this construction of the proviso to the act of 1876. It was manifestly the intention of the Legislature to remove all doubt as to the purpose and effect of the statute law of the state regarding this question, of so much importance to the security of title to property and the extent of incumbrances thereon. By so construing, as the language clearly denotes, the proviso of 1914 as to make mortgages recorded, after the time limit, operate as against "all creditors" as though they had been executed and delivered on the day of their registration, relieves the rights of the mortgagees and subsequent creditors of the uncertainty

which, it is conceded, previously existed. This uncertainty rendered titles to property insecure because of the difficulty and frequent impossibility of ascertaining what debts had been contracted during the 10 days' interim between the execution and registration of the mortgage, and whether such creditors had notice of the mortgage. This construction harmonizes with that usually placed upon registration acts in other states.

I concur in the conclusion of the special master that the mortgage held by the Merchants' & Farmers' Bank of Marion on the tobacco seized by it is a valid lien to the extent of the unpaid balance of the note of $10,000, executed by F. H. Saunders & Co. February 15, 1919. I am further of the opinion that the mortgage, by its express terms, is limited to securing the note of $10,000, due and payable to the Merchants' & Farmers' Bank of Marion, S. C., and cannot, as against the trustees of F. H. Saunders & Co. be extended to secure a separate indebtedness due the Bank of Latta, S. C.

The Merchants' & Farmers' Bank of Marion, S. C., will deduct from the proceeds of the sale of the tobacco, $9,125, the balance due on said note, $8,061.66, together with $404 cost, insurance, and attorney's fees and pay the balance to the trustees in bankruptcy of F. H. Saunders & Co.