## 11813

### TUCKER v. HUDGENS

(129 S. E., 77)

CHATTEL MORTGAGES—PLEDGEE OF COTTON AFTER EXECUTION, BUT BEFORE RECORDING OF CHATTEL MORTGAGE THEREON, HELD TO HAVE LIEN SUPERIOR TO MORTGAGEE'S—Where before recording of chattel mortgage on cotton, nineteen months after its execution, the mortgaged cotton was placed in warehouse of another creditor of mortgagor and pledged to payment of past due note, *held*, under Civ. Code, 1922, § 5312, pledgee's lien was superior to that of mortgagee's, notwithstanding Section 5519, which relates to recording of lien; that section being in interest of bailor, not of bailee, and also expressly exempting deposit of property as pledge or collateral to a loan from operation of statute.

Before A. C. TODD, SPECIAL JUDGE, Anderson, June, 1923. Affirmed.

Action by W. H. Tucker against W. K. Hudgens. Judgment for defendant and plaintiff appeals.

*Messrs. Greene & Earle* and *A. H. Dagnall,* for appellant, cite: *Persons protected by Recording Acts:* 8 Wall, 292; 19 L. Ed., 415; 13 L. R. A., 235; Civ. Code, 1922, Sec. 5312; 125 S. C., 340; 125 S. C., 221. *Subsequent creditors; past indebtedness:* 27 S. C., 576; 36 S. C., 204; 106 S. C., 425; 112 S. C., 555. *Pledges to be recorded:* Civ. Code, 1922, Sec. 5519.

*Messrs. Bonham & Price* and *Quattlebaum & Watkins,* for respondent, cite: *Extending time for payment a valuable consideration:* 3 R. C. L., 940; 8 C. J., 438; 32 S. C., 237; 5 S. C., 490. *Forbearance to sue a valuable consideration:* 2 Nott & McCord, 133; 2 Hill, 48; 2 Rich., 133. *Pledge creates a lien:* 21 R. C. L., 651; 2 McC. Eq., 126; 19 S. C., 485; 97 S. C., 185. *Object of recording act:* 109 S. C., 312; 118 S. E., 290.

July 30, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action in claim and delivery for 17 bales of cotton, in possession of the defendant, which the plaintiff claims are covered by a chattel mortgage given to him by one A. M. Gaillard. Verdict for the defendant; plaintiff appeals.

The undisputed facts are as follows:

On February 26, 1921, A. M. Gaillard executed and delivered to the plaintiff, W. H. Tucker, a chattel mortgage upon 60 bales of cotton, then in his possession, to secure the payment of a note for $19,850, given by Gaillard to Tucker on December 2, 1919, and payable one day after date. This chattel mortgage was not recorded until September 22, 1922, 19 months after its execution.

In March, 1921, Gaillard delivered to the defendant, W. K. Hudgens, 17 bales, covered by the Tucker mortgage, which were placed in the warehouse of Hudgens. Hudgens claims that this cotton was pledged to him by Gaillard, pursuant to an agreement between them, whereby Gaillard was to pledge to Hudgens 100 bales to secure the payment of a past due note for $4,688.70, dated August 12, 1920, and payable November 1, 1920, which Gaillard owed to Hudgens for fertilizers furnished during the year 1920. As additional consideration for said pledge, Hudgens agreed to grant "an extension of time for the payment of said fertilizer note," "to carry the fertilizer note on," and to furnish Gaillard with fertilizers and supplies for the year 1921.

It appears that, Gaillard having delivered in pledge only 17 of the 100 bales promised, Hudgens declined to make any advances in fertilizers or supplies, during the year 1921, as contemplated in their agreement, or to extend credit of any kind after the 17 bales were delivered, and claims to hold the 17 bales as security solely for the $4,688.70 note due for fertilizers furnished in 1920.

The plaintiff's sole exception is as follows:

"Because his Honor, the presiding Judge, erred in charging defendant's fourth request to charge, which is as follows: 'The jury are instructed that, if they find that one

A. M. Gaillard executed to W. H. Tucker, the plaintiff, a chattel mortgage covering a certain lot of cotton, and if the jury further find that such mortgage was not recorded within 10 days after the time of its delivery or execution, and if the jury further find that after such delivery or execution, the said A. M. Gaillard deposited a part of the cotton covered by such mortgage with defendant as a pledge or collateral to secure a debt of the said A. M. Gaillard to the defendant, and if the jury further find that such delivery or deposit was made to the defendant before such mortgage was recorded in the office of the Clerk of Court, and if the jury further find that the defendant, at the time of such delivery or deposit of such cotton, had no notice or knowledge of the mortgage given by the said A. M. Gaillard to the plaintiff, then the defendant would have the right of title, and possession of such cotton, and the plaintiff cannot recover the same from the defendant, and the jury must·find for the defendant.' "

The specifications of error are:

"(a) Because one person receiving from another personal property as a pledge to secure past due indebtedness after said property had been mortgaged to a third person by pledgor does not constitute a pledgee a subsequent creditor or purchaser for value as contemplated by the recording acts of the State of South Carolina, and does not give to the pledgee any rights in said personal property that would defeat or affect in any way the lien of the prior chattel mortgage, although the same be unrecorded.

"(b) Because said charge failed to take into account the requirements of the statute law of South Carolina, whereby such a pledge as that mentioned in the charge must be reduced to writing and recorded within 10 days before it could defeat or affect a chattel mortgage previously executed but subsequently recorded without notice of the existence of the pledge."

The positions of the plaintiff are clearly defined in the specifications above set forth. His contention, in the first place, is that Hudgens, having taken the pledge of the 17 bales as security for a past due obligation, cannot be considered a subsequent creditor for value, without notice, and entitled to the protection of section 5312, vol. 3, Code 1922, relating to the recording of instruments in writing. It is quite true that under the circumstances Hudgens cannot be so considered. *Carroll v. Cash Mills,* 125 S. C., 332; 118 S. E., 290; *Lipscomb Russell Co. v. Hobbs-Henderson Co.,* 125 S. C., 214; 118 S. E., 303; *Carraway v. Carraway,* 27 S. C., 576; 5 S. E., 157; *Summers v. Brice,* 36 S. C., 204; 15 S. E., 374; *Heyward v. Zeigler,* 106 S. C., 425; 91 S. E., 298; *Pittman v. Raysor,* 49 S. C., 469; 27 S. E., 475.

It is equally true that the pledge was supported by a valuable consideration. In addition to the contention of the defendant that a part of the consideration was the extension of time upon the fertilizer note, upon which we attach little weight, in view of the failure of Gaillard to pledge the number of bales agreed upon, and Hudgens' refusal thereafter to furnish supplies and fertilizer or to regard the agreement for extension as binding, the pledge needed no other consideration than the preexisting debt. See, upon the matter of extension of time constituting a valid consideration, 3 R. C. L., 940; 8 C. J., 438; *Fuller v. Allen,* 32 S. C., 237; 10 S. E., 947; 7 L. R. A., 745; *Hutton v. Edgerton,* 6 S. C., 490; *Miles v. McLellan,* 2 Nott & McC., 133; *Fyler v. Givens,* 3 Hill, 48; *Thomas v. Croft,* 2 Rich., 113; 44 Am. Dec., 279.

There can be no doubt but that by the pledge Hudgens acquired a lien upon the 17 bales of cotton to the extent of the indebtedness secured. 21 R. C. L., 651; *Coleman v. Shelton,* 2 McCord Eq., 126; 16 Am. Dec., 639; *Hendrix v. Harmon,* 19 S. C., 485; *Haselden v. Hamer,* 97 S. C., 185; 81 S. E., 427.

the pledge, it is a matter of no consequence whether he was a subsequent creditor for value without notice or not.

The proviso to section 5312 reads thus:

"Provided, nevertheless, that the recording and record of the above mentioned deeds and instruments of writing subsequent to the expiration of said days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof."

As construed by this Court in the case of *Carroll v. Cash Mills,* 125 S. C., 332; 118 S. E., 290, this proviso means that a mortgage recorded after the 10-day limit for recording is valid against all general unsecured creditors who become such between the time of the execution and the date of recording of such instrument. The theory of this construction is clearly elucidated in the opinion of Judge Connor in the case of *In re Saunders* (D. C.), 272 F., 1003, adopted as a part of the opinion in *Carroll v. Cash Mills,* and set forth in full therein. As declared in that opinion:

"The Legislature crystallized into a statute the construction put upon the act of 1876 by the Supreme Court in *King v. Fraser,* 23 S. C., 543."

The syllabus of that case is as follows:

"Under the Registry Act of 1876 * * * a mortgage recorded after the time * * * allowed by the act, acquires a lien from the date of its record, and will, from that date, have priority as to the mortgaged lands over the general debts of the mortgagor not having liens, including such as were contracted without notice to the creditors, between the date of the execution of the mortgage and the date of its record."

It is remarkable that the statute expresses the very character which the mortgage under such circumstances assumes, as was argued as the basis of the Court's conclusion in the *King v. Fraser Case,* namely:

"Shall have the same effect * * * as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof."

. In the opinion of Mr. Justice McGowan in that case it is said:

"It is certainly the general rule that a bona fide lien, no matter when entered, from that time forth has priority over all debts which are then unsecured, without the least regard to their date. * * * To say that a mortgage shall be valid, means, of course, valid as a mortgage, that is to say, a lien upon specific property, with the ordinary incidents of such lien, one of which is priority as to that particular property over all other debts of the mortgagor, which have not prior to that time ripened into a lien."

If, therefore, the plaintiff's chattel mortgage, not having been recorded in time, must have the same effect as if it had been executed and delivered on the date of its record, and so had priority over all unsecured debts contracted between its execution and its registry, it follows that it did not have priority over secured debts contracted either between that period or prior to its execution, unless there be some statutory requirement as to the recording of the lien referred to. This plaintiff contends exists under Sections 5519. It is a sufficient answer to this contention to say that in the first place the requirement is in the interest of the bailer, not of the bailee, and, in the second, the statute expressly exempts the deposit of such property "as a pledge of collateral to a loan," from the operation of that statute. ·

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY, MESSRS. JUSTICES WATTS and MARION, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.