## HAGAN v. McNIEL.

### In re SULPHUR SPRINGS LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. July 18, 1918.)

#### No. 1615.

1. BANKRUPTCY ⬤⟜467—REVIEW ON APPEAL—FINDINGS OF FACT.
   A finding of fact by a referee, concurred in by the District Court, will not be reversed by the appellate court, unless clearly against the weight of evidence.

2. BANKRUPTCY ⬤⟜165(4)—VALIDITY OF LIENS—PRESENT CONSIDERATION.
   Where a creditor holding an unrecorded lien, but with the right of immediate possession, gave up such right and took a mortgage within four months prior to bankruptcy of the debtor, such mortgage was valid, and not preferential, to the extent of the new consideration, which was the value of the property subject to the prior lien, which was surrendered.
   Woods, Circuit Judge, dissenting.

Cross-appeals from the District Court of the United States for the Western District of Virginia; Henry Clay McDowell, Judge.

In the matter of the Sulphur Springs Lumber Company, bankrupt. Claim by Charles F. Hagan, trustee, opposed by W. D. McNiel, trustee in bankruptcy. Cross-appeals from order of District Court allowing claim in part as secured claim. Affirmed in part, and reversed in part.

C. V. Meredith, of Richmond, Va. (Pennington & Handy, of Bristol, Va., on the brief), for appellant and cross-appellee.

W. H. Bond, of Wise, Va. (Bond & Bruce, of Wise, Va., on the brief), for appellee and cross-appellant.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. This case comes up on two appeals from an order of the District Court made November 22, 1917. It appears that on the 10th of April, 1914, Charles F. Hagan, trustee, the appellant, sold and conveyed to Grover B. Bickley and R. Willard Cox all of the merchantable timber belting 36 inches and up in circumference 3 feet from the ground on certain tracts of land in Hunter's Valley, Va. The price of the timber, other than maple, beech, and gum, was $4 per thousand feet board measure, with lower prices for maple, beech, and gum. The purchase money was to be paid on each thousand feet as the same was sold, shipped, or disposed of. If the pur-

chasers failed to make payments for the lumber as sold or shipped, they were to have their customers make payments of the purchase money of the timber to People's National Bank of Gate City, out of which the bank should first pay the amounts due for the stumpage. The lumber was to be manufactured and stacked upon the grounds of Hagan, trustee, the appellant herein, which were to be furnished by him free of charge, and the purchasers agreed and bound themselves to keep sufficient lumber on the mill yard itself at all times to pay any arrears that might be due on the stumpage, and a lien was expressly retained on all the lumber manufactured sufficient to cover any amount which might become due to the said Hagan, trustee. The lumber yards were to be kept insured and the insurance made payable to Hagan, trustee. This contract of sale was not recorded. Bickley and Cox, the purchasers, put in a mill and railroad on the property of Hagan, and operated it under the name of Sulphur Springs Lumber Company. The purchasers failed to perform the contract, by failing to pay for much of the lumber the Sulphur Springs Lumber Company had shipped at the time of the shipment, and failed to have their customers turn over the purchase money, as had been agreed to the People's National Bank of Gate City. The purchasers being considerably in arrears on their payments, Hagan, trustee, took action to collect the amount due him, and orders were given to the Sulphur Springs Lumber Company, through Hagan's agents, that no further shipments of lumber would be permitted until settlement was made for the past-due payments, and threatened proceedings to enforce the lien and for a receiver. The lumber company thereupon suspended shipments, but tried to induce Hagan to forego the provisions of the contract.

After considerable negotiation between the attorneys of Hagan and Bickley and Cox a deed of trust was executed on October 9, 1916, which was so drawn as to secure whatever was already due and which might become due under the contract of 10th of April, 1914. This last deed of trust or mortgage was thereafter recorded. Three days before the expiration of four months from the time of the execution of this deed of trust certain creditors of the Sulphur Springs Lumber Company filed a petition for and obtained an adjudication in bankruptcy against the Sulphur Springs Lumber Company, a partnership composed of R. W. Cox and C. B. Bickley. Hagan, trustee, elected to file his claim in the proceeding, and surrendered whatever possession he had of the lumber in the hands of the Sulphur Springs Lumber Company at the time of the adjudication to the trustee in bankruptcy, and filed his claim in this matter as a secured claim against the lumber on the yards and the property embraced in the deed of trust of 9th of October, 1916. Thereupon objections were made to the allowance of the claim as a secured claim, both as to the lumber on the yards and as to the property conveyed by the deed of trust.

The referee held that the deed of trust executed on the 9th day of October, 1916, was ineffectual to give valid liens to the debts attempted to be secured, as having been executed within four months prior to the adjudication in bankruptcy; it being evident that the parties executing the deed of trust were insolvent at the time the deed of trust

was executed, and that Charles F. Hagan, trustee, and his attorney, had sufficient knowledge of such insolvency, and that the deed of trust would create a preference, to put them upon inquiry. The referee, however, held further that so much of the claim of Hagan, trustee, as was actually due and unpaid for the purchase price of the timber was good as a secured claim against the lumber and timber that actually went into the hands of the trustee in bankruptcy, upon the ground that this lumber was in the constructive, if not the actual, possession of the claimant, Charles F. Hagan, trustee, and that the lien reserved to him in the unrecorded deed of the 10th of April, 1914, was good as against the trustee in bankruptcy and the creditors of the bankrupts. Upon petition to the District Court in bankruptcy for the review of this finding of the referee, that court on the 22d of November, 1917, filed its order affirming the order and finding of the referee in bankruptcy.

The assignments of error in the appeal and cross-appeal practically raise three questions: First. Was there any sufficient knowledge of the insolvency of Bickley and Cox on the 9th day of October, 1916, in Charles F. Hagan, trustee, or his attorneys, as would render that deed of trust invalid as a preference under the terms of the bankruptcy statute? Second. Was there any new consideration, and, if so, how much, emanating from Charles F. Hagan, trustee, as consideration for the deed of trust or mortgage of the 9th of October, 1916, which would operate pro tanto as new valuable consideration and good and secured under that instrument? Third. If the deed of trust of the 9th of October, 1916, was invalid as a preference, and there was no new consideration emanating from Hagan, trustee, which would operate to make it valid pro tanto, was Hagan, trustee, entitled as in possession of the lumber and timber stacked on the premises to assert a lien or claim thereon under the terms of the unrecorded contract of sale dated 10th of April, 1914?

[1] The referee has found upon the testimony that Bickley and Cox were insolvent at the time of the execution of the deed of trust of the 9th of October, 1916, and has further found under the testimony that both Charles P. Hagan, trustee, and his attorney had sufficient knowledge of the insolvency and that the deed of trust would create a preference to put them on inquiry at that date. This conclusion of fact has been concurred in by the District Judge. This court does not find that such conclusion is clearly against the weight of the evidence, but, on the contrary, it appears that there is sufficient evidence to sustain it, and it should not therefore be disturbed.

[2] The second question involves a more serious question of law. Under the agreement of 10th of April, 1914, Hagan, trustee, was to be paid for the timber as each 1,000 feet was sold, shipped, or disposed of, and the purchasers agreed also to keep sufficient lumber on the mill yard at all times to pay any arrears that might be due on the stumpage, and that the vendor, Hagan, trustee, should retain a lien on any and all lumber manufactured sufficient to cover any amount which might be due him. In October, 1916, there was a large amount due Hagan for timber shipped and disposed of, and

Hagan was about to institute proceedings for a receivership and to procure payment of it. If Hagan, trustee, had instituted his proceedings then and seized, he could have taken possession at once, under the terms of his contract, of all the lumber that was in the yards. Under the urgency of the bankrupts not to take proceedings, but to give them more time, Hagan, trustee, forebore this right of his, and gave up the immediate rights against the lumber then stacked in the yards, in consideration of receiving the deed of trust or mortgage of 9th of October, 1916. Under subsection 67d of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 564 [Comp. St. 1916, § 9651]), where a lien is given and accepted in good faith for a present consideration under a deed which would operate as a preference under other circumstances, it is not affected as being invalid as a preference to the extent of such present consideration.

The question, therefore, is whether the giving up of this present right of procedure and enforcing payment which was then possessed by Hagan, trustee, in order to enable the bankrupts to continue on, constituted such a present consideration as pro tanto would be valid. The general rule is that a present consideration does not necessarily consist of money. It may consist of the substitution of one security for another, or the giving up of value which could have been secured at the time for a postponement. If Hagan had enforced his debt at the time, there is nothing in the evidence to show that he could not at once have seized, sold, and realized upon the lumber on the yards to pay the past debt for stumpage due him. This constituted a liquid or easily realizable asset which he had the then present right of realizing upon. This present right of enforcement he gave up, and accepted notes which postponed his right of present payment to practically five months after the date of the mortgage. Under these circumstances it would appear that there was a present consideration for the mortgage or deed of trust dated 9th of October, 1916, to the extent of $12,552.87, which appears from the testimony to have been the value of the lumber on the yards on 9th of October, 1916, and which Hagan, trustee, relying upon the substituted security of the deed of the 9th of October, 1916, allowed to be shipped away and the proceeds used by Bickley and Cox or the Sulphur Springs Lumber Company.

With regard to the manufactured lumber on hand at the time of the appointment of the trustee, the referee below found that the lumber on hand at the time of the appointment of the trustee in bankruptcy and the filing of the petition in bankruptcy herein was in fact manufactured and stacked on the lands of Charles F. Hagan, trustee, and that under the law of Virginia, where a lien is given on personal property and possession of the property is delivered to or acquired by the lienholder, the lien is good and can be enforced against other creditors, even though the instrument creating the lien was not recorded.

The referee finds that the lumber had been placed at least in the constructive, if not the actual, possession of Charles F. Hagan, trustee, and therefore the lien given in the contract of April 10, 1914,

was good against the trustee in bankruptcy and the creditors, even though the same was not recorded. This finding of the referee has been affirmed by the presiding judge below, and depends substantially upon the question of whether or not the lumber stacked was in the possession of Charles F. Hagan, trustee; and this conclusion of fact having been found by the referee and the District Judge below, this court sees no reason in the testimony for disturbing it. In the opinion of the court, therefore, the learned District Judge below erred in not finding that there was present consideration at the time of the execution of the deed of trust of 9th of October, 1916, to the extent of the value of the lumber then on the land which could have been seized and sold by the appellant, Charles F. Hagan, trustee, and that in all other respects the decree below should be affirmed.

Modified.

WOODS, Circuit Judge (dissenting). Having a strong conviction that the deed of trust given by the bankrupts, Bickley & Cox, copartners doing business as Sulphur Springs Lumber Company, to Hagan, trustee, was invalid under the bankrupt statute, I am constrained to dissent on that point. On April 10, 1914, Hagan, trustee, sold to Sulphur Springs Lumber Company the merchantable timber on the tract of land described in the contract. The purchase money, represented by a fixed price per thousand feet as the lumber was manufactured, was to be paid on each thousand feet as it was sold. If the purchaser failed to pay as the lumber was sold or disposed of, it was to have the persons to whom it sold to pay the purchase money to a bank, and out of such payments the bank was to first pay the amounts due Hagan, trustee. The lumber was to be manufactured and stacked upon the ground of Hagan, trustee, and lumber of sufficient value was to be kept there to pay any arrears due to Hagan. A lien was retained on all the manufactured lumber sufficient to cover any amount which might become due to Hagan. The purchaser, Sulphur Springs Lumber Company, failed to pay for much of the lumber as it was shipped, and failed to have the purchasers from it turn over the purchase money to the bank as agreed. Thereupon Hagan, trustee, forbade the further shipments until settlement should be made for the amounts due, and threatened to take proceedings to enforce his lien and have a receiver appointed. To relieve its embarrassment, the Sulphur Springs Lumber Company gave to Hagan, trustee, the deed of trust here involved to secure all arrears under the contract and such sums as might thereafter become due. Within four months thereafter the Sulphur Springs Lumber Company was thrown into bankruptcy. The District Court held that Hagan had notice of its impending insolvency when the deed of trust was taken, and that, therefore, it was invalid as a preference under the Bankruptcy Act.

The majority of this court, while agreeing that the deed of trust was taken by Hagan with notice of the insolvency of the debtors, nevertheless holds that there was a present valuable consideration for the deed of trust, and that therefore it constituted a valid lien upon the property which it covered. This present consideration, as stated

by the majority, was the giving up by Hagan, trustee, of the right to seize the lumber then in the yard, and the giving to the debtor additional time in which to make payment. No case has been cited, and I think none can be found, in which the mere extension of an antecedent debt has been held to be such a present consideration as to make a preference valid. The statement that Hagan, trustee, surrendered his right to seize the lumber then on the yard is based entirely upon his oral testimony to the effect that he agreed to allow the Sulphur Springs Lumber Company to ship the lumber without making the payments in accordance with the original contract of sale. This statement of his agreement is in square contradiction of the following provision of the deed of trust:

"It is further expressly agreed and understood that this deed of trust shall in no way affect the rights of the said Charles F. Hagan, trustee, under said contract of April 10, 1914, and the provisions contained therein, and the lien given thereby upon the manufactured lumber, nor is it intended in any way to modify the provisions of said contract, but only to give additional security to the said Hagan for said debt, and all the provisions and obligations contained in said contract and the rights of said Hagan thereunder shall remain the same as if this contract had not been entered into, nor shall the execution of notes for any stumpage due at any time, and time extended for payment, affect the rights of said Hagan or be treated as a novation of said debt for stumpage, nor the right to enforce payment if said contract is violated by failure to keep sufficient lumber on hand to secure said Hagan as provided in said contract or for any other cause."

It is true that a consideration in addition to that expressed in a deed may be proved by parol. That, however, is not the question, nor the difficulty which confronts the creditor. Had nothing more appeared than that a trust deed of land was taken expressing merely that it was taken as additional security, and the creditor had testified that as an additional consideration he had agreed in writing to release the lumber held under his previous contract, there would be no legal difficulty in holding the parol evidence sufficient to prove an agreement to release the lumber. But here the parol evidence is completely destroyed by the express terms of the deed of trust itself. The parol testimony is that the debtor, in consideration of the trust deed, was released from the obligation to keep sufficient lumber on hand to pay the debt. The trust deed expressly stipulated that it should not have that effect, that it should be only an additional security, that the original contract should remain in full force, that the rights of the creditor to enforce it should remain as if the trust deed had not been executed, and that the failure to keep sufficient lumber on hand to secure the creditor would be a violation of it. To allow the creditor, after disaster comes, to destroy the effect of a clear and express provision of the contract by merely testifying that the real contract was exactly the contrary of that explicitly expressed in the writing, is, in effect, to erase from the deed of trust one of its stipulations in favor of the creditor and to substitute in its stead the creditor's parol evidence of what he agreed to.

The fact that the creditor afterwards chose to waive his rights under either or both the written contracts could not relate back, and give either of them an effect contrary to its terms. I think the decree of the District Court should be affirmed.