## FIRESTONE TIRE & RUBBER CO. et al. v. CROSS.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

No. 2564.

1. **Fraudulent conveyances ⬉154(1)—Contract between tire manufacturer and automobile dealer held one of bailment void as to subsequent creditors unless recorded as required by South Carolina Statute (Civ. Code S. C. 1922, §§ 5312, 5519).**

Contract between tire manufacturer and automobile dealer, pursuant to which tires belonging to manufacturer were stored with dealer who made shipments from time to time on manufacturer's orders and sold at retail tires which were later charged to him, *held* a contract of bailment void as to subsequent creditors unless recorded as required by Civ. Code S. C. 1922, § 5519, construed with section 5312.

2. **Bailment ⬉1—"Bailment' is delivery of goods for some purpose on contract that they shall be redelivered or dealt with according to bailor's direction.**

"Bailment" is the delivery of goods for some purpose on a contract, expressed or implied, that after the purpose has been fulfilled they should be redelivered to the bailor or otherwise dealt with according to his directions or kept until he claims them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bailment.]

3. **Courts ⬉366(39)—Federal courts are bound by state court's interpretation of registration statutes.**

Federal courts, in passing on the effect to be given registration statutes and the failure to comply with them, are bound by decisions of state court interpreting such statutes.

17 F.(2d)—27

4. **Bankruptcy ⬉140(3)—Trustee in bankruptcy of automobile dealer held not entitled to tires repossessed by manufacturer before filing of petition in bankruptcy, notwithstanding noncompliance with state recordation statute (Bankruptcy Act, §§ 47a, 70e [U. S. Comp. St. §§ 9631, 9654]; Civ. Code S. C. 1922, § 5519).**

Where tire manufacturer repossessed tires in possession of automobile dealer six weeks before filing of petition in bankruptcy against dealer, *held*, under Bankruptcy Act, §§ 47a, 70e (U. S. Comp. St. §§ 9631, 9654), trustee in bankruptcy was not entitled to recover tires so repossessed, though contract under which they were held was one which should have been recorded under Civ. Code S. C. 1922, § 5519, in order to be valid against subsequent creditors.

5. **Fraudulent conveyances ⬉136—South Carolina statute relating to recording of agreements reserving interest in personalty must be construed with general recording act (Civ. Code S. C. 1922, §§ 5312, 5519).**

Civ. Code S. C. 1922, § 5519, relating to recording of agreements reserving any interest in personal property, must be construed with general recording act, section 5312, and reference had to the latter section for the time, manner, and effect of the recording required.

6. **Chattel mortgages ⬉192—Fraudulent conveyances ⬉136—Sales ⬉474(2)—Mortgages, conditional sales contracts, or bailments, if recorded after statutory period, are valid as to creditors who have not already secured some lien on property involved (Civ. Code S. C. 1922, §§ 5312, 5519).**

Under Civ. Code S. C. 1922, §§ 5312, 5519, an unrecorded mortgage, conditional sale contact, or contract of bailment, though void as against subsequent creditors of mortgagor, vendee, or bailee, if recorded after the statutory period is then good as against all creditors who have not in the meantime secured some lien on the property involved.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Action by T. C. Cross, as trustee in bankruptcy of the Capital City Garage & Tire Company, against the Firestone Tire & Rubber Company and another. Judgment for plaintiff, and defendants bring error. Reversed.

D. W. Robinson, of Columbia, S. C. (B. M. Robinson, of Akron, Ohio, on the brief), for plaintiffs in error.

J. Nelson Frierson, of Columbia, S. C. (Frierson & McCants, of Columbia, S. C., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. This was an action at law, instituted by the trustee in

bankruptcy of the Capital City Garage & Tire Company of Columbia, S. C., against the Firestone Tire & Rubber Company and its subsidiary company, the Oldfield Tire Company, hereinafter called defendants, to recover the possession of certain automobile tires and accessories or their value. The case was referred to a referee in accordance with the practice prevailing in the state courts of South Carolina. He made a report, which was approved in part by the judge, who found additional facts and gave judgment in favor of the trustee for the sum of $18,834.-06, the value of the property in controversy.

The facts as established by the evidence and embodied in the findings of the judge are as follows: Bankrupt was engaged in operating a general automobile business, selling automobiles, tires, tubes, and accessories, in the city of Columbia. On October 20, 1922, he entered into contracts with defendants by the terms of which he agreed to store and handle for them their storage and transfer stock at Columbia. In accordance with these contracts, defendants placed in his possession a large stock of tires and accessories, from which he made shipments from time to time upon their orders. For services rendered in thus storing and shipping the transfer stock, bankrupt received a commission of 5 per cent. on sales made therefrom. The sales, however, were made in the name of defendants and by their salesmen, and the goods sold were billed out and collected for by them. Bankrupt did not agree to buy the stock thus placed on storage, it was not charged to bankrupt, and the only right of sale which bankrupt possessed with respect thereto was that when it had a chance to make a retail sale to one of its own customers in the ordinary course of business, it was allowed to do so, but was required to make immediate report thereof to defendants, and was immediately charged with the property thus sold. The bankrupt expressly agreed that upon termination of the contracts it would immediately deliver the property then in its possession or control to defendants, and that, upon its failure to do so, defendants might enter upon its premises and remove same.

The contracts were not recorded, but on October 31, 1923, six weeks before the bankruptcy, defendants, having discovered that bankrupt was not complying with their provisions, proceeded to terminate them and to take the storage and transfer stock from the possession of bankrupt and remove it to another building, where it was placed in possession of other persons. The value of the goods thus seized was $18,834.06. The claims of creditors who extended credit to the bankrupt after the contracts were executed and the goods placed in its possession amounted to more than twice this sum, but the total of the claims of such subsequent creditors who were without notice of the contracts was only $3,659.33.

[1] We think that there can be no question that the contracts fall within the class whose registration is required by the South Carolina statutes. Section 5519 of volume 3 of Code of 1922 provides: "Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, inn keepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan."

[2] The contracts were clearly contracts of bailment. "Bailment is the delivery of goods for some purpose, upon a contract expressed or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims them." Am. & Eng. Encyc. of Law (2d Ed.) 733; Armour & Co. v. Ross, 78 S. C. 294, 58 S. E. 941, 1135; Walter A. Wood Mowing & Reaping Machine Co. v. Vanstory (C. C. A. 4th) 171 F. 375. The facts in the case last cited were in all material respects similar to those of the case at bar, and the reasoning of Judge Pritchard is conclusive that the relationship between the parties here with respect to the goods in controversy was that of bailor and bailee. In the case entitled "In the matter of H. A. Tansill, Doing Business as Carolina Waste Company," in the District Court of the United States for the Western District of South Carolina, decided March 31, 1922, 17 F. (2d) 413, Judge Watkins dealt with the case of cotton linters stored in the warehouse of a bankrupt under an agreement that the bankrupt should submit to the owner offers of purchase, which must have been accepted on the part of the

owner before a sale was consummated. The learned judge held the statute to be applicable to such a bailment, and, in the course of an able opinion filed in the case, said: "It would seem, therefore, that the statute was intended to prevent one from placing in the hands of another, upon consignment or otherwise, tangible personal property to which title was reserved, and thereby clothing him with apparent ownership, and thus furnishing a basis of credit, unless and until the agreement of bailment should be reduced to writing and recorded. The Legislature saw fit to exempt certain classes of bailments from the operation of the statute and made it imperative that all others desiring protection against subsequent creditors should observe the requirements laid down."

In Townsend v. Ashepoo Fertilizer Co. (C. C. A. 4th) 212 F. 97, this court held the statute to be applicable to a contract between the vendor and vendee of fertilizer, where the contract provided that the goods should be held in trust as security for the purchase price. The court said: "Even if the contract had provided for a bailment instead of a sale of the fertilizer, the same result would follow, since the South Carolina statute covers bailments as well as sales."

[3-5] But we do not think that it follows that, because the contracts were required by the statute to be recorded, the trustee was entitled to recover the value of the property from the owner who had retaken possession of it prior to the bankruptcy. In passing upon the effect to be given registration statutes, and the failure to comply with them, we are, of course, bound by the decisions of the state courts interpreting these statutes. Bryant v. Swofford Bros., 214 U. S. 279, 291, 29 S. Ct. 614, 53 L. Ed. 997; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 363, 32 S. Ct. 164, 56 L. Ed. 231; Holt v. Crucible Steel Co., 224 U. S. 262, 265, 32 S. Ct. 414, 56 L. Ed. 756. And it is settled by the decisions of the Supreme Court of South Carolina that section 5519 of the Code, quoted above, must be construed along with section 5312, and that reference must be had to the latter statute for the time, manner, and effect of the recording required by the former. Carroll v. Cash Mills, 125 S. C. 347, 118 S. E. 290; In re American Slicing Machine Co., 125 S. C. 214, 118 S. E. 303.

Section 5312 is as follows: "*What Instruments are to Be Recorded—When, Where and Effect.*—All deeds of conveyances of lands, tenements or hereditaments, either in fee simple or for life, all deeds of trusts or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or encumbering the same; all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal; all marriage settlements or instruments in the nature of a settlement of marriage; all leases or contracts in writing made between landlord and tenant for a longer period than twelve months; all statutory liens on buildings and lands for materials or labor furnished on them; all statutory liens on ships and vessels; all certificates of renunciation of dower; and, generally, all instruments in writing now required by law to be recorded in the office of register of mesne conveyances or clerk of court in those counties where the office of register of mesne conveyances has been abolished, or in the office of the Secretary of State, delivered or executed on and after the first day of May, in the year of our Lord one thousand nine hundred and nine, shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within ten days from the time of such delivery or execution in the office of mesne conveyance or clerk of court of the county where the property affected is situated, in the case of real estate; and in the case of personal property of the county where the owner of said property resides, if he resides within the state, or if he resides without the state, of the county where such personal property is situated at the time of the delivery or execution of said deeds or instruments: Provided, nevertheless, that the recording and record of the above mentioned deeds and instruments of writing subsequent to the expiration of said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof."

The foregoing statute embodies the recording act of 1876 as materially amended in 1898, in 1909, and, finally, in 1914. The history and effect of these amendments, and the interpretation to be given the statute as it now stands, were learnedly and exhaustively treated by the late Judge Conner in his opinion in the case of In re F. H. Saunders & Co. (D. C.) 272 F. 1003, which was adopted by the Supreme Court of South Carolina

as a part of the opinion of that court in Carroll v. Cash Mills, supra. Judge Conner, who was the author of the registration law of North Carolina, and a recognized authority on the law affecting recording acts, points out that under the statute as originally enacted an instrument recorded after the time allowed had priority over all general debts which had not become liens at the time of its recording, regardless of whether they were contracted before or after the execution of the instrument, citing the leading case of King v. Fraser, 23 S. C. 543. The amendment of 1898, as he shows, inserted in the statute the words, "whether lien creditors or simple contract creditors," and added a proviso that, upon the recording of the instrument out of time, "from the date of such record" it should "operate as notice to all who may subsequently thereto become creditors"; and under the statute as thus amended, it was held that "mortgages not recorded within the time fixed are invalid as to subsequent creditors whose debts were contracted before actual record, but that after actual record no superior lien can be acquired by judgment or otherwise." Brown v. Sartor, 87 S. C. 116, 69 S. E. 88. The only change made in the statute by the amendment of 1914 was to strike therefrom the proviso added by the statute of 1898, and insert in lieu thereof the proviso which appears in the above quotation of the statute.

In construing this amendment, Judge Cohner said: "'While counsel for the trustees earnestly contend for a contrary construction of this proviso, I venture to think that the Legislature intended what it said— that the mortgage, recorded out of time, was deprived of its validity by relation to the date of its execution, as to debts contracted subsequent to its execution and before registration, but was a valid lien as against all debts in respect to which no lien had attached, from the date of its registration—as if the mortgage had been executed on the date of its registration; in other words, the Legislature crystallized into a statute the construction put upon the act of 1876 by the Supreme Court in King v. Fraser, supra. While not of controlling force, it is significant that the proviso of 1914 is in substantially the same language as the second headnote to King v. Fraser."

And, in construing the meaning of the words "whether lien creditors or simple contract creditors," as contained in the statute, he said: "It is of interest to note that, while the words 'whether lien creditors or simple

contract creditors' are for the first time found in the act of 1898, and re-enacted in 1914, the proviso of 1914 gives to the registration of the mortgage 'subsequent to the expiration of ten days * * * the same effect as to the rights of all creditors and purchasers without notice as if * * * executed and delivered on the date of the record thereof.' It would seem that the words 'whether lien creditors or simple contract creditors' were inserted in the act of 1898 to remove any doubt as to the extent of the retroactive effect of registration within the 10-day limit, and to exclude all doubt as to the intention to give to the registration, out of time, the same effect as a mortgage executed on the day of its registration, the comprehensive words 'all creditors' were used."

It should be noted that the instrument under consideration in the Saunders Case was a chattel mortgage within the provisions of section 5519 of the Code, which was recorded after the time prescribed by section 5312. Debts had been contracted by the mortgagor between the date of execution of the mortgage and the date of its recording, and the only question involved was whether the lien of the mortgage was good against these subsequent creditors, who had not obtained a lien prior to the recording of the mortgage. The decision of Judge Conner is clear and unequivocal that the mortgage is valid as against the claims of such creditors, and the adoption of his opinion as a part of the opinion of the court by the Supreme Court of South Carolina in a similar case makes it authoritative and controlling, and not merely persuasive.

In Carroll v. Cash Mills, supra, the case in which the opinion of Judge Conner in the Saunders Case was adopted, having under consideration the effect of a conditional sale contract, recorded after the statutory period, against subsequent unsecured creditors, the Supreme Court of South Carolina, speaking through Mr. Justice Cothran, said: "As to the second question: The conclusion of the court is that, under section 3542 [now 5312], applicable to section 3740 [now 5519], a valid reservation of title contract (equivalent to a chattel mortgage), recorded after the 10-day limit, and prior to receivership, is valid as against all general unsecured creditors who become such between the time of the execution and the date of recording such instruments."

In the later case of Tucker v. Hudgens, 132 S. C. 378, 129 S. E. 77, the Supreme Court of South Carolina, again speaking

through Mr. Justice Cothran, said: "As construed by this court in the case of Carroll v. Cash Mills, 125 S. C. 332, 118 S. E. 290, this proviso means that a mortgage recorded after the 10-day limit for recording is valid against all general unsecured creditors who become such between the time of the execution and the date of recording of such instrument. The theory of this construction is clearly elucidated in the opinion of Judge Conner in the case of In re Saunders (D. C.) 272 F. 1003, adopted as a part of the opinion in Carroll v. Cash Mills, and set forth in full therein. As declared in that opinion: 'The legislature crystallized into a statute the construction put upon the act of 1876 by the Supreme Court in King v. Fraser, 23 S. C. 543.' "

This matter was before the District Court of the United States for the Western District of South Carolina, in the matter of the Syleecau Mfg. Co., Bankrupt, 17 F.(2d) 503, decided September 29, 1922, before the decision in Carroll v. Cash Mills, and Judge Watkins reached the same conclusion at which Judge Conner had arrived. He says, referring to the proviso enacted in 1914: "The plain import of these words is to give to a mortgage priority over all claims not having the effect of a lien at the time of the record. Any other construction would make of the amendment a nullity."

[6] In the light of the foregoing decisions, there can be no doubt whatever that, under the present state of the law in South Carolina, while a mortgage, conditional sale contract, or contract of bailment is void as against subsequent creditors of the mortgagor, vendee, or bailee, unless recorded pursuant to the statute, nevertheless, if it be recorded after the statutory period, it is then good against all creditors who have not in the meantime secured some lien upon the property. If therefore the contracts in this case had been recorded at any time prior to the filing of the petition in bankruptcy, there can be no doubt that they would have been good against general creditors and against the trustee in bankruptcy. It is true that the contracts were not recorded, but it is undisputed that six weeks before the petition in bankruptcy was filed, the property embraced in the contracts was repossessed by the owners and taken from the custody of the bailee. Can there be any question that this recaption of the property was as effective for preserving the rights of the owners as the mere recording of the contracts would have been? Recording would have been only

constructive notice of defendants' claim. The recaption was actual notice and more than actual notice of the claims of defendants, for it withdrew the property itself from the possession of the bailee. If it be said that it is a hardship on creditors who have extended credit on the faith of the bankrupt's possession that their claims should be defeated by this recaption of the property by the owners, the answer is that their claims could undoubtedly be defeated by the mere recording of the contract at any time before they secure a lien on the property, and that the hardship is no greater in the one case than in the other. If the bailor can continue to leave the property in the possession of the bailee and protect his rights against prior unsecured creditors by merely placing the contract on record, he certainly should be able to protect them by terminating the contract, and taking the property back into his possession.

That the recaption of property under statutes, interpreted as are the recording acts of South Carolina, is as efficacious to protect the rights of the owner as registration is, we think, supported not only by reason but also by authority. Remington on Bankruptcy (3d Ed.) vol. 4, § 1570, states the rule applicable to such cases as follows: "If possession is taken by the mortgagee or conditional vendor before the bankruptcy petition is filed, such taking of possession operates as a filing and the lien will be good although bankruptcy follows within four months, unless the mortgage or conditional sale is otherwise void as a preference, or void as containing a power of sale."

The rule and the reason for it are well stated by the late Judge Woods, speaking for this court, in Industrial Finance Corporation v. Capplemann (C. C. A. 4th) 284 F. 8, 11, as follows: "When a state recording statute, as construed by the state court, only provides for protection against unrecorded instruments of 'lien creditors' or 'creditors who have fastened a lien on the property,' or 'creditors armed with judicial process,' or the like, it has been held that the trustee cannot recover the property when the holder of an unrecorded mortgage or other instrument requiring record acquires possession before the filing of the petition in bankruptcy. This holding is on the express ground that the rights of no creditors had attached to any of the property until the petition was filed; that the trustee did not until then acquire the right of a lien creditor, and therefore could not recover property

which had bona fide passed from the possession and ownership of the bankrupt before the petition was filed."

In Hart v. Emmerson-Brantingham Co. (D. C.) 203 F. 60, 62, cited with approval in the Capplemann Case, Judge Dyer said: "We thus · come to the ultimate question here presented, namely, has a judgment creditor of a conditional vendee any remedy or right of redress as against the conditional vendor, where such vendor has reclaimed his goods from the vendee pursuant to the terms of the contract of conditional sale, previous to the rendition of the creditor's judgment? While I can find no case decisive of this precise question, a resort to fundamental principles constrains me to conclude that under these circumstances a judgment creditor would be entitled to no redress as against the conditional vendor. In the case here presented, the conditional vendor reclaimed its goods under a title which was superior to that of its conditional vendee, and as, at the time of the transaction, the return of the property was a lawful and valid act as between the parties, and as the rights of no creditor · had then attached, it would seem clear upon principle that the transaction cannot be successfully assailed by one who is subsequently vested with the rights of a judgment creditor. Humphrey v. Tatman, 14 Am. Bankr. Rep. 74, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956; Thompson v. Fairbanks, 13 Am. Bankr. Rep. 437, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Johansen Bros. Shoe Co v. Alles, 28 Am. Bankr. Rep. 299, 197 F. 274, 116 C. C. A. 636; Barton v. Sitlington, 128 Mo. 164, 30 S. W. 514. The same considerations lead me to the conclusion that the return of the goods cannot properly be treated as a preferential transfer, for the defendant took back the property under the assertion of a paramount title, and did not take it as a creditor for application upon a debt."

Other cases supporting the position that taking possession will supply the place of registration are Duffy v. Charak, 236 U. S. 97, 35 S. Ct. 264, 59 L. Ed. 483; Woods v. Stemple (C. C. A. 4th) 289 F. 239; Hagan v. McNiel (C. C. A. 4th) 253 F. 716, 719; Russell v. Miller (C. C. A. 6th) 13 F.(2d) 852; In re Thomas Electric Corporation (C. C. A. 7th) 283 F. 392; First State Bank of Crook, Colo., v. Fox (C. C. A. 8th) 10 F. (2d) 116.

So far we have dealt with the taking of possession as though the contracts in question were mortgages under which possession

had been taken by the mortgagee. As a matter of fact, however, in taking possession of the property in this case, defendants were not seizing it to hold as security for a debt, but as property which belonged to them absolutely and unconditionally, the title to which they had never parted with even conditionally. It had been placed in the hands of bankrupt as bailee but remained at all times the property of defendants. When the contracts were terminated and possession taken by defendants, in accordance with their terms, the contracts were completely executed and ended, and there was no right of redemption, or other interest in the property, on the part of the bailee. To hold in such case that the rights of the owners were not protected by what was done, but that they would have been protected by merely placing the contracts on record while allowing the goods to remain in the possession of bankrupt, would be manifestly absurd.

We have discussed the questions involved at considerable length, because the decision of this court in the case of Industrial Finance Corporation v. Capplemann, 284 F. 8, is apparently in conflict with the decision here. That was a case involving the rights of the holder of an unrecorded chattel mortgage under the registration laws of South Carolina, but it was rendered before the Supreme Court of that state had decided the case of Carroll v. Cash Mills, supra, construing the amendment of 1914. An examination of the opinion in the Capplemann Case will show that the court did not consider the effect on the registration statutes of the amendment of 1914, but based its decision on the assumption that it was still the law of South Carolina that "the rights of subsequent simple contract creditors for value without notice against conveyances or liens not recorded as required by the statute accrue when the credit is extended, and cannot be defeated by any subsequent action of the holder of the secret conveyance or lien." As shown above, this is the view which has been expressly repudiated by the Supreme Court of South Carolina, construing the amendment, which was apparently overlooked in the Capplemann Case. Of course, the construction put upon the statute by the courts of the state, in a case like the present, must control the federal courts. Cutler v. Huston, 158 U. S. 423, 15 S. Ct. 868, 39 L. Ed. 1040.

As the defendants took possession of the property in question prior to the filing of the petition in bankruptcy, we do not think, in the light of the interpretation placed up-

on the registration statutes of South Carolina by the Supreme Court of that state, that the trustee is entitled to recover either the property or its value. The trustee is vested by law merely with the title of the bankrupt as of the date he was adjudged a bankrupt. Bankruptcy Act, § 70 (a), being Comp. St. § 9654. He may avoid any transfer which any creditor might have avoided. Section 70 (e). And, as to property in the custody of the bankruptcy court, he is vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, and, as to property not in the custody of the court, is vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 47 (a) as amended by Act of June 25, 1910 (Comp. St. § 9631). The bankrupt had no title to the property in controversy when the petition in bankruptcy was filed, and, as shown above, it had not been transferred by a transfer which any creditor was entitled to avoid. The amendment of 1910 does not help the trustee, because the property never came into the custody of the bankruptcy court, and no creditor at the time of the filing of the petition in bankruptcy could have reached it even if he had had an execution returned unsatisfied. It is settled that the trustee takes the status of a lien creditor under the amendment of June 25, 1910, as of the date of the filing of the petition. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275.

It may be well to note that there is neither allegation nor proof that the contracts in question were fraudulently withheld from record so as not to affect the credit of the bailee, and consequently the questions raised in Crothers v. Soper (C. C. A. 4th) 10 F. (2d) 793, and National Bank v. Shackelford, 239 U. S. 81, 36 S. Ct. 17, 60 L. Ed. 158, do not arise here. The action was not instituted to recover property preferentially transferred and we cannot so treat it; for in the first place the property in controversy was not the property of the bankrupt, and in the second place, it was not transferred in payment of a debt. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 274, 36 S. Ct. 50, 60 L. Ed. 275; Henderson Tire & Rubber Co. v. Reeves (C. C. A. 8th) 14 F.(2d) 903. Moreover, whether the taking of possession, even where there is a debt, is valid against the trustee, depends upon the law of the state. Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956. We are dealing here simply with an action by the trustee to recover property or its value, on the ground that unrecorded bailment contracts were void as against creditors of the bailee. And, without stopping to discuss whether, if the contracts were void as contended, the exclusive remedy of the trustee would not have been in equity to recover the amount that creditors without notice could have subjected to their claims, we are satisfied, in view of the interpretation placed upon the registration statute by the Supreme Court of South Carolina, that the taking of possession under the contracts preserved the rights of the owners in the property as against the claims of creditors who had not secured a lien, and that consequently the trustee is not entitled to recover anything.

For the reasons stated, we think that the learned District Judge erred in entering judgment in favor of the trustee. Same is accordingly reversed, and the cause is remanded for a new trial in accordance with the principles here expressed.

Reversed.