In re SMITH.
Ex parte CLINTON SALES CO.
Ex parte CALVERT.
Bankrupt No. 4371.

District Court, E. D. South Carolina,
Columbia Division.

Jan. 14, 1943.

F. Ehrlich Thomson and Richard T. Maher, both of Columbia, S. C., for Clinton Sales Co.

Clarke W. McCants, of Columbia, S. C., for Y. C. Calvert, Trustee.

F. Wm. Cappelmann, of Columbia, S. C., for Flag Pet Food Corporation.

Robert Moorman, of Columbia, S. C., Referee in Bankruptcy.

TIMMERMAN, District Judge.

An opinion was entered in the above stated case on September 26, 1942, and as appears from the record the opinion was filed September 28, 1942.

On October 12, 1942, the above named Flag Pet Food Corporation filed a petition for a rehearing. The rehearing was granted and the questions raised were decided today. The Court is satisfied with the conclusions reached in the first opinion, but for the purposes of clarity and the correction of certain minor errors therein the following is substituted as the opinion of the Court:

There are two contests involved in this proceeding now before me, both of which arose in the administration of the above stated bankrupt estate. One is between Y. C. Calvert, as Trustee of the bankrupt estate, and Clinton Sales Company (hereinafter referred to as Clinton Company), and the other is between said Trustee and Flag Pet Food Corporation (hereinafter referred to as Flag Corporation). In the first, Clinton Company is asking for a review and reversal of the Referee's order denying its claim to possession of certain merchandise. In the second the Trustee is asking a review and reversal of the order of the Referee directing the surrender of possession of certain merchandise to Flag Corporation. The petitions for review and reversal were heard together and at the same time, and they will be disposed of in one opinion. The first, wherein Clinton Company is the petitioner, will be designated "I", and the second, wherein Y. C. Calvert, Trustee, is the petitioner, will be designated "II".

I. J. D. Smith, trading as Food Sales & Distributing Company (hereinafter referred to as bankrupt), was adjudged an involuntary bankrupt on December 13, 1941, and on said date this proceeding was

referred to Robert Moorman, Esq., Referee in Bankruptcy, Columbia, South Carolina.

Pursuant to notice the first meeting of the creditors was held in Columbia, S. C., on the 23rd day of January, 1942. At this meeting Y. C. Calvert was elected and confirmed as Trustee of said bankrupt estate. He later qualified as such and he is now and has been since his qualification the Trustee of said bankrupt estate.

At the first meeting of the creditors, and on at least one occasion thereafter, the bankrupt was examined in regard to the claim of Clinton Company that it is the owner of and entitled to the possession of certain merchandise, 21 bbls. of corn syrup and 40 bags of corn sugar, which was in the possession of the bankrupt at the time of the adjudication. The Referee reported that, in addition to hearing the testimony and considering all exhibits touching the matter in controversy, he made a personal inspection of the merchandise in question at its location in the store room of the bankrupt. The Referee denied the claim of Clinton Company for the return of said merchandise and held it as an asset in the hands of the Trustee for the benefit of the creditors of the bankrupt estate.

The Clinton Company, in its petition for review, specifies nine (9) alleged errors in the order of the Referee. The first three (3) impute errors in findings of fact, and the last six (6) claim errors of law. It is contended in the first two exceptions that the Referee erred in finding that the merchandise in question was displayed with other merchandise of the bankrupt, in the bankrupt's place of business, and that such merchandise apparently belonged to the bankrupt.

In his first examination the bankrupt testified that the claimant Clinton Company shipped merchandise to him, in care of itself, to Columbia, S. C.; that Clinton Company authorized him to sell and deliver said merchandise to customers and report the same so that it could in turn bill the purchasers for the purchase price; and that for such services he received a commission. The bankrupt further testified that the merchandise claimed by Clinton Company was consigned, and that all sales thereof were made only upon Clinton Company's authorization; that said Company gave the bankrupt a list of persons to whom sales could be made, and that all sales were made at prices fixed by Clinton Company. The bankrupt also testified that he handled no money for the goods consigned by Clinton Sales Company, except money for C. O. D. orders and money derived from the collection of checks made payable to Clinton Sales Company, from none of which he was allowed to deduct his commissions; and that all such collections were remitted promptly to Clinton Company, and before commissions were paid to him.

Upon his second examination, the bankrupt testified that he had been both a trucker and a broker; that when consigned goods were delivered by him to purchasers thereof duplicate sales tickets were made, one being left with the buyer and the other forwarded to the consignor, who in turn sent an invoice to the buyer; and that all sales were made to customers designated by the consignor and in amounts approved by it. During the second examination of the bankrupt the following occurred:

"Mr. McCants: Coming right down to the Clinton Sales Company these goods were consigned to Food Sales and Distributing Company by Clinton Sales Company and shipped to you in care of themselves?

"Mr. Smith: Yes sir.

"Mr. McCants: They were stored in your warehouse along with other goods consigned in a similar manner?

"Mr. Smith: Yes sir.

"Mr. McCants: You consider that the title to the property was in the Clinton Sales Company and they told you how it should be sold?

"Mr. Smith: Correct.

"Mr. McCants: And you know they were thoroughly acquainted with the fact that you were a broker?

"Mr. Smith: Yes sir.

"Mr. McCants: And in this same warehouse there were goods the title of which was in the Food Sales and Distributing Company?

"Mr. Smith: The peas were the only thing we had title to."

I am not prepared to say that the Referee erred in finding the facts as he did. The Referee had the advantage of seeing the place where the goods in question were kept and besides it seems uncontradicted in the record that the goods claimed by

Clinton Company were kept in the same building and upon the same floor with goods that had been consigned by other customers to the bankrupt and with at least some property of the bankrupt.

The Clinton Company further complains that the Referee erred in not holding as a fact that "the creditors of the bankrupt had actual notice that petitioner's merchandise belonged to petitioner and not to the bankrupt."

 I have not found any testimony in the record supporting the contention that the creditors of the bankrupt had actual notice or knowledge of the bailment contract, or of any other character of contract, between the Clinton Company and the bankrupt prior to the adjudication. Undoubtedly the burden was on the Clinton Company to show such notice or knowledge, and it did not do so.

The remaining exceptions relate to questions of law, and they are so inter-related that they may be well considered together.

 In Armour & Co. v. Ross, 78 S. C. 294, 58 S.E. 941, 942, 1135, the Supreme Court of South Carolina adopted the following definition of bailment, taken from 3 Encyclopedia of Law, 733: "Bailment is the delivery of goods for some purpose, upon a contract expressed or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims them." The same definition of bailment was adopted by Judge Parker in the opinion in Firestone Tire & Rubber Co. v. Cross, 4 Cir., 17 F.2d 417, 418. This definition of bailment fits the facts in this case, even as they are contended for by the Clinton Company. The Clinton Company retained title to the property and delivered possession thereof to the bankrupt, reserving to itself the right to direct the disposition of the property, or to later reclaim it, something it did not do before the institution of the bankruptcy proceeding, or before adjudication.

If the relation of bailor and bailee existed between the parties, as I hold it did, then it follows that Section 7047, Code of Laws of South Carolina 1932 is applicable. It reads as follows: "Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, inn keepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan."

In the instant case the contract between the parties was not in writing. Although the bankrupt testified that the oral contract was confirmed by letter, no letter was offered in evidence. Whether the contract was in writing or not, it was not recorded. It therefore follows that the Clinton Company can claim no benefit by reason of the recording of its contract as required by the South Carolina statutes; nor is the Clinton Company in the same situation as was the defendant in the case of Firestone Tire & Rubber Co. v. Cross, supra. In that case, the Firestone Tire & Rubber Co. was a bailor. It placed certain of its goods with the Capital City Garage & Tire Company, which company was to retain possession of said goods and make shipments thereof from time to time upon its orders. All sales of goods were made in the name of the Firestone Tire & Rubber Co. by their salesmen, and the goods so sold were billed out and collected for by it or its agents. The contract was held to be a bailment. It was not recorded, but the bailor repossessed its goods, as it had a right to do, prior to the institution of bankruptcy proceedings against the Capital City Garage & Tire Company, the bailee. The Court held, upon the authority of Carroll v. Cash Mills, 125 S.C. 332, 118 S.E. 290, that the repossession of its goods before the intervention of bankruptcy preserved the bailor's rights in said property to the same extent as if it had recorded its contract of bailment. The Trustee of the bankrupt failed in his effort to recover the goods that had been repossessed by the bailor before bankruptcy, or the value thereof. That is not the case here. In the instant case the goods in question were in the possession of the bankrupt-bailee at the time of the adjudication; they then passed into the custody of the Court; and

they are now in the possession of the Trustee of the bankrupt estate.

In re Tansill, D.C., 17 F.2d 413, was cited with approval in the case of Firestone Tire & Rubber Co. v. Cross, supra. In the Tansill case it was held that agreements of the character here in question are void as to subsequent creditors when not recorded, and that they are covered by the provisions of the cited State statute. This view finds support in Townsend v. Ashepoo Fertilizer Co., 4 Cir., 212 F. 97, 100, wherein it was said by Judge Woods, speaking as the organ of the court: "Even if the contract had provided for a bailment instead of a sale of the fertilizer, the same result would follow, since the South Carolina statute covers bailments as well as sales." In the Townsend case the Ashepoo Fertilizer Co. had shipped certain of its products to the bankrupt, reserving title thereto until the same were sold for its account. The contract was in writing but not recorded prior to bankruptcy. After bankruptcy the Fertilizer Company sought to repossess the fertilizer. The Court said: "In the case of Millikin v. Second National Bank of Baltimore [4 Cir.], 206 F. 14, 124 C.C.A. 148, 30 A.B.R. 477, this court held that, under the amendment of 1910 to the Bankruptcy Act, the trustee by virtue of his appointment became a subsequent lien creditor without notice, *holding the property embraced in an unrecorded mortgage for the benefit of all the creditors.*" (Emphasis added)

In Augusta Grocery Co. v. Southern Moline Plow Co., 4 Cir., 213 F. 786, 787, the controversy concerned the rights of an unrecorded mortgage creditor as against antecedent creditors of the bankrupt. The Court stated that the question for decision was "whether the trustee is the owner of the vehicles in question for the benefit of all creditors of the * * * bankrupt"; and then proceeded to say:

"In the case of Millikin v. Second National Bank of Baltimore [4 Cir.], 206 F. 14, 124 C.C.A. 148, 30 A.B.R. 477, this court decided the question involved in this controversy adversely to the contention of the respondent.

"Also the following cases are to the same effect: Williamsburg Knitting Mill [D.C.], 190 F. 871, 27 A.B.R. 178; In re Kreuger [D.C.], 27 A.B.R. 623, 199 F. 367; In re Farmers Supply Co. [D.C.], 196 F. 990, 28 A.B.R. 535.

"We are therefore of the opinion that the court below erred in reversing the order of the referee, wherein it was held that the trustee held the property in question for the benefit of all the creditors of the bankrupt."

In oral argument reference was made to the case of Industrial Finance Corporation v. Capplemann, 4 Cir., 284 F. 8. It was contended that this case had been overruled by Firestone Tire & Rubber Co. v. Cross, supra, but this is true in part only. There were three points decided in the Capplemann case and only the decision on the third point was overruled, as may be seen by reference to an excerpt from the opinion in the Firestone Tire & Rubber Co. case, to-wit:

"An examination of the opinion in the Capplemann case will show that the court did not consider the effect on the registration statutes of the amendment of 1914, but based its decision on the assumption that it was still the law of South Carolina that 'the rights of subsequent simple contract creditors for value without notice against conveyances or liens not recorded as required by the statute accrue when the credit is extended, and cannot be defeated by any subsequent action of the holder of the secret conveyance or lien.' As shown above, this is the view which has been expressly repudiated by the Supreme Court of South Carolina, construing the amendment, which was apparently overlooked in the Capplemann case. Of course, the construction put upon the statute by the courts of the state, in a case like the present, must control the federal courts. Cutler v. Huston, 158 U.S. 423, [424], 15 S.Ct. 868, 39 L.Ed. 1040.

"As the defendants took possession of the property in question prior to the filing of the petition in bankruptcy, we do not think, in the light of the interpretation placed upon the registration statutes of South Carolina by the Supreme Court of that state, that the trustee is entitled to recover either the property or its value. The trustee is vested by law merely with the title of the bankrupt as of the date he was adjudged a bankrupt. Bankruptcy Act, § 70(a), being Comp.St. § 9654 [11 U.S. C.A. § 110, sub. a]. He may avoid any transfer which any creditor might have avoided. Section. 70(e). *And, as to property in the custody of the bankruptcy court, he is vested with all the rights, remedies, and powers of a creditor holding a*

*lien by legal or equitable proceedings thereon,* and, as to property not in the custody of the court, is vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 47(a) as amended by Act of June 25, 1910 (Comp.St. § 9631 [11 U.S.C.A. § 75, sub. a]). The bankrupt had no title to the property in controversy when the petition in bankruptcy was filed, and, as shown above, it had not been transferred by a transfer which any creditor was entitled to avoid. *The amendment of 1910 does not help the trustee, because the property never came into the custody of the bankruptcy court,* and no creditor at the time of the filing of the petition in bankruptcy could have reached it even if he had had an execution returned unsatisfied. *It is settled that the trustee takes the status of a lien creditor under the amendment of June 25, 1910, as of the date of the filing of the petition.* Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275." [17 F.2d 422.] (Emphasis added)

It will thus be seen that the decision in the Firestone Tire & Rubber Co. case in no way conflicts with the decision on the second point in the Capplemann case, wherein Judge Woods, speaking for the Court, said [284 F.2d 11]: "But there is no dissent from the view that the holder of an unrecorded mortgage or similar instrument *who has not taken possession before bankruptcy* cannot recover the mortgaged property in the possession of the trustee, even when the state statutes protect only subsequent lien creditors, and not subsequent simple contract creditors, from an unrecorded instrument; *for the reason that under the bankruptcy statute from the filing of the petition the trustee stands in the shoes of a subsequent lien creditor without notice.* Potter Mfg. Co. v. Arthur [6 Cir.], 220 F. 843, 846, 136 C.C.A. 589, Ann.Cas.1916A, 1268; Massachusetts Bonding & Ins. Co. v. Kemper [6 Cir.], 220 F. 847, 851, 136 C.C.A. 593; National Bank of Bakersfield v. Moore [9 Cir.], 247 F. 913, 160 C.C.A. 103; In re American Steel Supply Syndicate [D.C.], 256 F. 876; In re Bettman-Johnson Co. [6 Cir.], 250 F. 657, 163 C.C.A. 3; Citizens' American Bank & Trust Co. v. Driscoll [5 Cir.], 279 F. 748; Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841." (Emphasis added)

It is true that if the bailor Clinton Company had recovered possession of its property from the bankrupt prior to the bankruptcy proceedings, he could not have been made to disgorge for the benefit of the creditors of the bankrupt, but that is not the case here. The property in question was in the possession of the bankrupt at the time of his adjudication as such and the Trustee of the bankrupt estate succeeded to the possession of said property; and thereby the trustee became "vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists." Act of June 22, 1938, c. 575, sec. 1, 52 Stat. 879, 11 U.S.C.A. § 110, sub. c.

I therefore agree with the Referee that the Clinton Company is not entitled to the possession of said merchandise, but that it should be administered by the Trustee of the bankrupt estate for the benefit of the creditors thereof.

II. The property claimed by the Flag Corporation consists of seventy-three cases of dog food. The Referee ordered the Trustee to surrender possession thereof to the Flag Corporation. The Trustee petitions for a review and reversal of said order on the ground that prior to bankruptcy the parties sustained the relationship of bailor and bailee with respect to said merchandise, and that the same having been in the possession of the bailee at the time he was adjudged a bankrupt the Trustee succeeded to such possession and now rightfully holds the property for the benefit of the creditors of the bankrupt.

The facts touching this contest are substantially the same as those in the contest between the Clinton Company and the Trustee. There are minor differences and upon these it appears that the Referee grounded his direction to the Trustee to surrender possession of the merchandise to the Flag Corporation. Undoubtedly Flag Corporation consigned its goods to the bankrupt upon the same conditions as prevailed in relation to the consignment made by the Clinton Company. The Flag Corporation retained title to the goods and authorized the bankrupt to sell and deliver the same to designated customers for cash or credit as it directed. The Flag Corporation billed the customer for the purchase price of such of the goods as was disposed of, collected therefor, and thereupon paid

the bankrupt a commission. The Flag Corporation had the right of repossession but never exercised it before the adjudication.

■ The Referee holds as a matter of fact that when the bankrupt moved his place of business from one store room to another, about seven months before the adjudication, he left the dog food in the building from which he had moved, and apparently had forgotten about it. Concerning this the bankrupt testified as follows:

"Mr. Capplemann: What about this dog food being left at 901 Huger Street.

"Mr. Smith: I think that is in the former testimony.

"Mr. Capplemann: Why was it overlooked in making up the inventory?

"Mr. Smith: Because Mr. Calvert and Mr. Bennet took the inventory and I was not down there to tell them about the dog food which was in the former place. We made arrangements with the man who took over the building to leave the dog food down there until the jobber picked it up.

\* \* \* \* \* \*

"Referee: Mr. Smith had you taken the inventory you would have included the dog food?

"Mr. Smith: Yes sir."

The foregoing testimony hardly warrants the inference drawn therefrom by the Referee of an abandonment of the merchandise in question by the bankrupt about May, 1941. To be sure, as held by the Referee, the Flag Corporation could have repossessed the property before bankruptcy ensued, but the point is that it did not do so. The dog food was in the possession of the bankrupt as bailee on the date he was adjudged a bankrupt, and the trustee succeeded to the possession thereof.

■ The Referee further holds that "it does not appear that any subsequent creditor of the bankrupt knew or could have known of the presence of this merchandise at the former warehouse of the bankrupt, and it appears that no subsequent creditor extended credit to the bankrupt with any thought that the bankrupt owned the said merchandise", but that does not change the fact that the Trustee succeeded the bankrupt-bailee in the possession of said goods and that he now holds them for the benefit of all creditors of the bankrupt.

Besides, the conclusion of the Referee rests largely upon surmise. There is no forthright testimony to the effect that none of the creditors extended credit on the faith of the bankrupt's possession of said goods. But let that be as it may, there was not even an attempt on the part of the Flag Corporation to show that all, or any one of the creditors of the bankrupt had actual notice or knowledge of a bailment contract between the Flag Corporation and the bankrupt. Hence the section of the Bankruptcy Act cited in Part I hereof applies. 11 U.S.C.A. § 110, sub. c,

In the instant case the facts are the converse of the facts in Firestone Tire & Rubber Co. v. Cross, supra, where it was held that the Trustee in bankruptcy could not repossess goods, or the value thereof, that had been reclaimed by the bailor of said goods before the institution of bankruptcy proceedings against the bailee. This ruling was rightly predicated upon the State recording statutes and a provision of the Bankruptcy Act then of force quite similar—may be not quite so strong—to the one referred to above. In neither this nor the cited case was the contract of bailment recorded. However, in the Firestone case, the repossession of the bailed property supplied the place of the recording of the contract and was quite as effectual. In the instant case, without recordation of the asserted contract of bailment, the property in question was "in the possession or under the control of the bankrupt at the date of bankruptcy" (11 U.S.C.A. § 110, sub. c). That makes the difference. The Flag Corporation must suffer the consequences of its neglect to protect its own interests. It had two means of doing so: First, by reducing its contract to writing and recording it; and, second, by reclaiming its property before bankruptcy. It resorted to neither remedy, and it must take the consequences of its neglect or indifference.

Reference is made to Part I hereof for a further discussion of this point.

I am of the opinion that the Referee was in error in ordering the Trustee to surrender possession of said dog food to Flag Corporation, and his action in so doing is reversed.